JOSEPH IANNACCHINO & others[1] vs. FORD MOTOR COMPANY
& another.[2]

Middlesex. February 4, 2008. - June 13, 2008.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, CORDY, & BOTSFORD, JJ.

*Consumer Protection Act*, Unfair or deceptive act, Warranty. *Motor Vehicle,*
Warranty, Defect. *Practice, Civil,* Complaint, Consumer protection case.

This court concluded that the plaintiffs in a civil action could seek redress
under G. L. c. 93A, § 9, for economic loss incurred as a result of overpay-
ing an automobile manufacturer for vehicles that the manufacturer know-
ingly sold noncompliant with applicable safety regulations (and therefore
in a potentially unsafe condition) or vehicles on which the manufacturer,
after learning of their noncompliant status, failed to initiate a recall and to
pay for the condition to be remedied. [629-631]
A Superior Court judge properly denied the defendant automobile manufactur-
er's motion for judgment on the pleadings on claims of a violation G. L.
c. 93A, § 9, and breach of the implied warranty of merchantability brought
by representatives of a proposed class of Massachusetts residents owning
certain models of the defendant's automobiles who alleged economic
injury (rather than personal injury or property damage) from the defendant's
purported practice of knowingly manufacturing, offering for sale, and
refusing to recall vehicles that did not comply with Federal safety regula-
tions and were defective, where, with respect to the former claim, the
complaint failed to identify a legally required standard that the vehicles
were at least implicitly represented as meeting, but allegedly did not (the
company's self-imposed standards did not qualify) [631-634]; and where
the latter claim was legally and factually intertwined with the former; ac-
cordingly, on remand, the pertinent counts of the complaint were to be
dismissed without prejudice, so as to provide the plaintiffs the opportunity
to file an amended complaint with respect to those claims [634-635].
COWIN, J., concurring in part and dissenting in part.
This court adopted a refinement of the standard for evaluating the adequacy of
a complaint in a civil action upon a challenge for failure to state a claim.
[635-636]

CIVIL ACTION commenced in the Superior Court Department on
February 15, 2005.

---

[1]Victor Marchese and Soledad Berrios, individually and as representatives
of a proposed class.

[2]Ford Motor Company of Canada, Ltd.

A motion for judgment on the pleadings was heard by *Thayer Fremont-Smith*, J., and the matter was reported by him to the Appeals Court. The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*William H. Narwold*, of Connecticut (*Kristen Marquis Fritz* with him) for the plaintiffs.

*Brian D. Boyle*, of the District of Columbia (*Mel Andrew Schwing*, of the District of Columbia, & *Thomas M. Elcock* with him) for the defendants.

The following submitted briefs for amici curiae:

*Hugh F. Young, Jr.*, of Virginia, *David R. Geiger* & *Rachel M. Brown* for The Product Liability Advisory Council, Inc.

*John Roddy, Elizabeth Ryan,* & *Paul R. Collier, III*, for AARP & others.

*Deborah J. La Fetra*, of California, for Pacific Legal Foundation.

*Robin S. Conrad* & *Amar D. Sarwal*, of the District of Columbia, & *Peter W. Herzog* for The Chamber of Commerce of the United States of America.

*Ben Robbins, Martin J. Newhouse,* & *Jo Ann Shotwell Kaplan* for New England Legal Foundation & another.

BOTSFORD, J. The question before us in this case concerns the viability of the plaintiffs' complaint. They bring the action as representatives of a proposed class of Massachusetts residents owning certain models of Ford vehicles, and they claim that the outside door handle systems in their vehicles are noncompliant with applicable Federal safety standards, defective, and unsafe. At issue in this appeal are the plaintiffs' claims for violation of G. L. c. 93A and breach of implied warranty.[3] The plaintiffs do not allege that their door handles have ever malfunctioned or that they have sustained any personal injury or property damage. Rather, they claim that Ford's alleged practice of knowingly manufacturing, offering for sale, and refusing to recall vehicles that do not comply with Federal safety regulations and are defective is unfair or deceptive and has injured the plaintiffs economically. We do not consider the lack of accident-related injury

[3]As explained *infra*, the plaintiffs have not raised any issues regarding the judge's dismissal of their remaining claims.

or manifested defect a bar to recovery under G. L. c. 93A, § 9, in this case. Nevertheless, we conclude that the plaintiffs' complaint does not contain sufficient factual allegations to make out either a § 9 claim or a claim for breach of implied warranty based on economic injury. For reasons we explain, we conclude that these claims in the plaintiffs' complaint should be dismissed without prejudice. We also take the opportunity to refine the standard governing motions to dismiss under Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974).[4]

1. *Prior proceedings and the plaintiffs' complaint.* The three named plaintiffs filed their complaint[5] in the Superior Court against Ford Motor Company; Ford Motor Company of Canada, Ltd. (collectively, Ford); and three component part manufacturers (makers of the door handles that were installed in Ford's vehicles),[6] asserting claims for violation of G. L. c. 93A, §§ 2 and 9, conspiracy to violate c. 93A, breach of express and implied warranties, and unjust enrichment. After filing its answer, Ford moved for judgment on the pleadings pursuant to Mass. R. Civ. P. 12 (c), 376 Mass. 754 (1974).[7] A judge in the Superior

---

[4]We acknowledge the receipt of amicus briefs filed in favor of Ford by the Pacific Legal Foundation; the New England Legal Foundation and Associated Industries of Massachusetts; the Product Liability Advisory Council; and the Chamber of Commerce of the United States of America; and a brief filed in favor of the plaintiffs by AARP, Massachusetts Academy of Trial Attorneys, National Association of Consumer Advocates, National Association of Shareholder and Consumer Attorneys, National Consumer Law Center, Public Citizen Litigation Group, and Public Justice.

[5]The version of the plaintiffs' complaint that is in the record is their first amended complaint. We shall refer to it as the complaint.

[6]All of the non-Ford defendants had been dismissed from the case before the Superior Court judge issued the ruling that is the subject of this appeal.

[7]A motion for judgment on the pleadings is "actually a motion to dismiss . . . [that] argues that the complaint fails to state a claim upon which relief can be granted." *Jarosz v. Palmer*, 436 Mass. 526, 529 (2002), quoting J.W. Smith & H.B. Zobel, Rules Practice § 12.16 (1974). In considering such a motion, "the allegations of the complaint, as well as such inferences as may be drawn therefrom in the plaintiff's favor, are to be taken as true." *Nader v. Citron*, 372 Mass. 96, 98 (1977). As pertains to this case, the complaint "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.*, quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). While we apply this standard in deciding the instant case, as described in part 3, *infra*, we take the opportunity to "retire" the *Conley* language.

Court granted Ford's motion and ordered dismissal of all counts except the count alleging breach of implied warranty. The judge then reported his decision to the Appeals Court pursuant to Mass R. Civ. P. 64, as amended, 423 Mass. 1410 (1996). We transferred the case here on our own motion.

The plaintiffs seek to represent a class consisting of all Massachusetts residents who own model year 1997 to 2000 Ford F-150, F-250 (light duty), and Expedition vehicles or model year 2000 Ford F-150 Super Crew vehicles, which the plaintiffs claim contain defective outside door handle systems; they state that "[e]xcluded from the class are all claims for personal injury by Plaintiffs or class members." The plaintiffs' complaint alleges that the door handles on these vehicles are defective and fail to comply with Federal Motor Vehicle Safety Standard No. 206 (FMVSS 206), a standard promulgated by the National Highway Traffic Safety Administration (NHTSA) pursuant to the National Traffic and Motor Vehicle Safety Act (Safety Act), 49 U.S.C. §§ 30111(a) et seq. (2000), 49 C.F.R. § 501.2(a)(1) (2006),[8] as well as with Ford's internal guidelines.[9] Because of this alleged defect and alleged regulatory noncompliance, the plaintiffs claim, the doors on the plaintiffs' vehicles might open accidentally in certain types of collisions, putting vehicle occupants at risk of significant personal injury or death.

With regard to Ford's knowledge and conduct, the complaint alleges as follows. By October, 1995, Ford knew or should have known that the door latch mechanisms on the vehicles at issue did not comply with FMVSS 206 and were improperly designed and manufactured. Nevertheless, for the next five years Ford continued to manufacture and market these vehicles and to issue statutorily required certifications of safety regulation compliance. In March of 2000, as a result of its own testing and investigation, Ford prepared an internal memorandum acknowledging the safety-related defect and noncompliance with FM-

[8]The plaintiffs also allege noncompliance with cognate Canadian safety regulations, but the relevant safety standards for vehicles owned by the plaintiffs, who are by definition Massachusetts residents, appear to be the NHTSA safety standards.

[9]As we discuss infra, the complaint may also be alleging that the vehicles are defective independently of Federal Motor Vehicle Safety Standard No. 206 (FMVSS 206) and Ford's guidelines.

VSS 206, and proposed a safety-related recall of the Ford vehicles to replace the door handle systems with FMVSS 206-compliant systems. However, on evaluating the cost of a recall, Ford changed its mind. Instead, even though Ford had always tested compliance with the strength requirements of FMVSS 206 by using a particular, preferred NHTSA-approved test called SAE J839, Ford at this time used an "antiquated and nonstandard" methodology referred to by the parties as the GM test, which it had never used before, to establish a feigned compliance with FMVSS 206. Resort to this alternate test was necessary because Ford and its component part manufacturers knew that the door handle systems did not and could not meet SAE J839, and "thus did not comply with FMVSS 206." Ford has never notified NHTSA of its noncompliance with FMVSS 206, as Ford was allegedly obligated to do; has never notified consumers; and has never ordered a recall. As a result of Ford's conduct, the plaintiffs and proposed class members have been injured because "they (1) own vehicles that are unsafe, (2) own vehicles that are worth less than their value were they to comply with all safety standards and (3) will incur the cost of repairing the vehicles to make them safe."

The complaint focuses in large part on the plaintiffs' claim that the outside door latches fail to comply with FMVSS 206. This NHTSA standard contains a number of subsidiary requirements, two of which are relevant here. See 49 C.F.R. § 571.206 (2006). First, the door latches must remain connected when specified amounts of force are applied in longitudinal and transverse directions; this is sometimes called the "strength" standard. 49 C.F.R. § 571.206, S4.1.1.1, S4.1.1.2. Second, the latches must remain connected when the vehicle to which the door is attached sustains an impact at a specified acceleration (in either the longitudinal or the transverse direction); this is sometimes called the "inertia load" standard. 49 C.F.R. § 571.206, S4.1.1.3. Automobile manufacturers in the United States are required by the Safety Act and NHTSA regulations to measure compliance with the NHTSA strength standard using a testing method described in "paragraph 5 of Society of Automotive Engineers Recommended Practice J839, Passenger Car Side Door Latch Systems, June 1991" (SAE J839). 49 C.F.R. § 571.206, S5.1.1.1. In demonstrating compli-

ance with the inertia load standard, however, manufacturers may rely either on a calculation described in paragraph 6 of SAE J839 or on other "approved tests." 49 C.F.R. § 571.206, S5.1.12. NHTSA has approved one alternate test in response to an inquiry from General Motors in the 1960's (GM test). 72 Fed. Reg. 5385-01, 5390 n.9 (2007). Thus, compliance with the inertia load requirement may be demonstrated using either SAE J839 or the GM test.[10]

The judge granted Ford's motion for judgment on the pleadings as to four of the complaint's five counts. With regard to the plaintiffs' claim under G. L. c. 93A, § 9, the judge concluded that the plaintiffs had alleged sufficient deceptive conduct on Ford's part to constitute a violation of G. L. c. 93A, § 2, but had failed to allege that the violation had caused them any cognizable injury. Citing this court's decision in *Hershenow* v. *Enterprise Rent-A-Car Co. of Boston*, 445 Mass. 790 (2006) (*Hershenow*), the judge concluded that the plaintiffs' claimed damages were "speculative and premature" because "no plaintiff alleges that he has been in an accident where the door latches failed or has otherwise suffered any actual damage." The judge consequently dismissed the plaintiffs' c. 93A claim, as well as their claim for conspiracy to violate c. 93A, because the latter was dependent on the underlying claim of a c. 93A violation. He also dismissed the plaintiffs' breach of express warranty claim, finding that they had not alleged that they had seen or relied on the labels certifying compliance with Federal safety regulations, as well as their unjust enrichment claim, concluding that "[t]he alleged facts in this case do not lend themselves to such a cause of action."[11] However, the judge denied Ford's motion as to the implied warranty claim on the basis that the plaintiffs had alleged a safety defect that would render the vehicles unfit for their ordinary purposes, resulting in a breach of the implied warranty of merchantability that had caused injury to the plaintiffs at the

---

[10]Although the complaint at times refers to testing the latches for "strength," it is clear that the plaintiffs' allegations refer to the inertia load standard. As explained *supra*, the plaintiffs allege that Ford used the GM test rather than SAE J839 in this testing, and only the inertia load standard offers this option. See 49 C.F.R. § 571.206, S5.1.1.1 & S5.1.1.2 (2006).

[11]The plaintiffs do not challenge the judge's dismissal of their conspiracy, unjust enrichment, or express warranty claims. We do not address them further.

time of purchase. The judge noted further that his dismissal of the c. 93A claim might be inconsistent with his ruling on the implied warranty claim, because "a breach of warranty can *itself* constitute a c. 93A violation" (citing *Slaney* v. *Westwood Auto, Inc.*, 366 Mass. 688, 702 [1975]). He also commented that "[t]he holding of *Hershenow*, as it may relate to this case, is far from clear." Accordingly, the judge reported his decision for appellate review.

2. *Discussion.* a. *The plaintiffs' G. L. c. 93A claim.* In order to bring an action under G. L. c. 93A, § 9, a consumer must have "been injured by another person's use or employment of" an unfair or deceptive act or practice. We must consider whether the plaintiffs in this case have adequately alleged an "injury" or "loss" for purposes of stating a claim under § 9. The plaintiffs assert that they have been injured because they paid for and currently own vehicles that purported to comply with Federal safety standards, but instead received noncompliant and defective vehicles. Ford's primary argument against recovery by the plaintiffs is that, as the judge concluded, they have not alleged any "actual" injury resulting from Ford's allegedly unfair or deceptive conduct. Ford argues that under *Hershenow*, the court's most recent consideration of the injury requirement under c. 93A, the plaintiffs have no cause of action under c. 93A, § 9, because they have not experienced door latch failure, paid to have the allegedly defective door handle systems repaired, sold their vehicles at a loss, or curtailed their use of their vehicles, and therefore have not been "affected . . . in any way" by Ford's alleged misconduct. *Hershenow*, 445 Mass. at 801 n.21.

In *Hershenow*, the court considered the claims of a proposed class of consumers who had rented automobiles from Enterprise Rent-A-Car (Enterprise) and paid extra for a "collision damage waiver" (CDW) that purported to waive Enterprise's claims against a renter for damage to a vehicle if it were involved in a collision during the rental period. *Id.* at 791-794. Although the *Hershenow* plaintiffs had returned their vehicles to Enterprise undamaged, they brought suit claiming that the CDW contained restrictions that violated Massachusetts statutory law. *Id.* at 792-793. The court agreed that the CDW did contain unlawful terms; however, because the unlawful language in the "CDW made [no] rental

customer worse off during the rental period than he or she would have been had the CDW complied in full" with the law, the plaintiffs had not been injured within the meaning of c. 93A, § 9 (1). *Id.* at 800-801.

We disagree that *Hershenow* controls this case. Although it is true, as the judge noted, that "[s]imilarly [to *Hershenow*], no plaintiff alleges that he has been in an accident," that comparison obscures the difference between the plaintiffs' positions in the two cases. The plaintiffs here purchased and own vehicles that they allege are noncompliant with applicable safety regulations. In contrast, the *Hershenow* plaintiffs purchased agreements committing a car rental company, Enterprise, to waive claims against them for damage to their rental cars occurring only during the rental period. The *Hershenow* plaintiffs would have been harmed only had two sequential events occurred: car damage during the rental period, followed by Enterprise's attempt to enforce against them a contract containing terms disallowed under Massachusetts law. Although the *Hershenow* plaintiffs had purchased a product that offered less protection than statutorily required, the unlawful contract terms "did not and could not" cause any harm to the plaintiffs *after* they had returned their vehicles undamaged at the end of their rental periods. *Id.* at 800.

Here, as mentioned, the plaintiffs continue to own the allegedly noncompliant vehicles. Motor vehicles are inherently dangerous in operation, and safety standards play a highly significant role in relation to them. Because this is so, a claim, supported by sufficient factual allegations, that the plaintiffs own vehicles manufactured and sold by Ford as meeting required government safety standards; that the vehicle's door handles, as Ford knew, failed to comply with NHTSA safety standards; and that the noncompliance was not properly remedied, would support a cause of action under G. L. c. 93A, § 9. The Safety Act requires automobile manufacturers to certify that all new cars sold in the United States comply with Federal safety standards, 49 U.S.C. § 30115(a), and to remedy any noncompliance that is later discovered, 49 U.S.C. §§ 30118-30120.[12] Accordingly, the purchase price paid by the plaintiffs for their vehicles would entitle them

---

[12]The plaintiffs need not show proof of actual reliance on a misrepresentation in order to recover damages under G. L. c. 93A. *Slaney v. Westwood*

to receive vehicles that complied with those safety standards or that would be recalled if they did not comply. If Ford knowingly sold noncompliant (and therefore potentially unsafe) vehicles or if Ford, after learning of noncompliance, failed to initiate a recall and to pay for the condition to be remedied, the plaintiffs would have paid for more (viz., safety regulation-compliant vehicles) than they received. Such an overpayment would represent an economic loss — measurable by the cost to bring the vehicles into compliance — for which the plaintiffs could seek redress under G. L. c. 93A, § 9.[13]

We conclude, however, that the plaintiffs' complaint does not adequately allege that their vehicles fail to comply with FMVSS 206. Although the plaintiffs assert noncompliance many times in broad fashion, their factual explanation of the alleged noncompliance ultimately relies exclusively on Ford's use of the GM test, rather than SAE J839, to measure door-handle adherence to the inertia load requirements of FMVSS 206. At the hearing on Ford's motion for judgment on the pleadings, however, the plaintiffs acknowledged that the GM test was in fact NHTSA-approved; once they made this concession, their allegation of safety standard noncompliance collapsed.[14] While they attempted to revive the claim by arguing that there was no

_Auto, Inc._, 366 Mass. 688, 703 (1975). Rather, "[w]hat the plaintiff[s] must show is a causal connection between the deception and the loss and that the loss was foreseeable as a result of the deception." _International Fid. Ins. Co._ v. _Wilson_, 387 Mass. 841, 850 (1983), citing _Kohl_ v. _Silver Lake Motors, Inc._, 369 Mass. 795, 800-801 (1976). Thus, even if the plaintiffs did not know of the Federal safety requirements, because certified compliance with the requirements is necessary for vehicles to get to market, the alleged misrepresentation would be causally related to the plaintiffs' purchase of the vehicles and therefore to their loss.

[13]Decisions by courts in other jurisdictions reflect divergent views about the viability of a class action complaint alleging violations of consumer protection statutes and breach of implied warranty premised on economic loss for overpayment for unsafe vehicles. Some have recognized such claims. See, e.g., _Lloyd_ v. _General Motors Corp._, 397 Md. 108, 150 (2007). Others have not, at least in situations where the vehicles have performed satisfactorily and the alleged defect has not actually become manifest. See, e.g., _Briehl_ v. _General Motors Corp._, 172 F.3d 623, 627-629 (8th Cir. 1999). (While the court in _Briehl_ rejected a claim of economic injury based on an unmanifested alleged defect, it did note that there was no claim of FMVSS noncompliance. _Id._ at 626.)

[14]As is evident from the text, we have considered, in addition to the plaintiffs' complaint, their memorandum and argument on the defendants' motion for

evidence Ford had applied the GM test correctly or that it had achieved passing results, these arguments have no factual support in the complaint.[15] Therefore, we conclude that the plaintiffs have failed to make out a case of violation of G. L. c. 93A, § 9, under a theory of regulatory noncompliance.

Throughout their complaint, the plaintiffs allege that Ford unfairly or deceptively manufactured and marketed vehicles that are "defective," or suffer from "safety-related defects."[16] In most such instances, the allegation equates the claimed defect with the plaintiffs' assertion of noncompliance with FMVSS 206. In light of our conclusion, discussed immediately above, that the complaint does not state an adequate claim of noncompliance with FMVSS 206, these intertwined assertions of "defect" must also fail. But to the extent the plaintiffs have attempted to allege that the door handles are defective independently of any issue with FMVSS 206, we add the following.

Because the term "defect" is conclusory and can be subjective as well, a bare assertion that a defendant, while representing the opposite, has knowingly manufactured and sold a product

judgment on the pleadings. In evaluating a motion pursuant to Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974), "we take into consideration 'the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account.' " *Schaer* v. *Brandeis Univ.*, 432 Mass. 474, 477 (2000), quoting 5A C.A. Wright & A.R. Miller, Federal Practice and Procedure § 1357, at 299 (1990).

[15]The complaint states that Ford "utilized" the GM test "to establish [an] argument that the outside door handle systems were compliant with FMVSS 206." This allegation implies that Ford in fact used the test and that its results indicated the handles complied.

The plaintiffs also suggested, in their memorandum and argument opposing the defendants' motion for judgment on the pleadings, that the handles may have failed the strength as well as the inertia load component of FMVSS 206. However, despite two separate references to "strength" tests, the allegations of the complaint, read as a whole, clearly focus on the inertia load requirement. See note 10, *supra*. If the plaintiffs intended to allege that their vehicles do not comply with the "strength" requirement set out in 49 C.F.R. § 571.206, S4.1.1.1 & S4.1.1.2 (2006), they should have set out the claim far more clearly.

[16]Stated more fully, the plaintiffs claim that Ford acted unfairly or deceptively in manufacturing and marketing vehicles that Ford knew were defective or had safety-related defects, and further in refusing to inform consumers of the defects and take steps to cure them.

that is "defective," or suffers from "safety-related defects," does not suffice to state a viable claim. See *Schaer* v. *Brandeis Univ.*, 432 Mass. 474, 477 (2000) ("we do not accept legal conclusions cast in the form of factual allegations"). See also part 3, *infra*. Where, as in this case, there is no allegation that the plaintiffs — or indeed anyone else — have suffered personal injury or property damage, the complaint must identify a legally required standard that the vehicles were at least implicitly represented as meeting, but allegedly did not.[17] When the standard that a product allegedly fails to meet is not one legally required by and enforced by the government, a claim of economic injury based on overpayment lacks the premise that the purchase price entitled the plaintiffs to a product that met that standard.

In light of these considerations, the plaintiffs have not alleged facts sufficient to make out a claim that their vehicles were defective in any way unrelated to FMVSS 206. The complaint does describe with some particularity two tests, separately conducted, in which the side door or doors of the tested vehicles opened on impact. But the complaint does not allege that the tested vehicles' performance fell on the "defective" side of any legally required standard separate from FMVSS 206. The plaintiffs cannot legitimately claim that the vehicles would be defective if they failed any conceivable test; they must include allegations that would connect the vehicles' failure on these tests to a legal requirement.

The complaint also asserts that the handles failed to meet Ford's internal standards. These standards are never described, but to the extent the complaint permits an educated guess, it seems to suggest that the internal standards are, simply, that

---

[17]Courts do engage in evaluating claims of "defect" unrelated to compliance with government regulations when called on to compensate victims of personal or physical injury who have no complete remedy available from a regulatory agency. However, when the injury alleged is purely economic, and there is a regulatory agency with relevant technical expertise and jurisdiction to provide relief for a problem that may affect many consumers, principles of primary jurisdiction may dictate that the agency "should have an opportunity to consider the claim prior to a judicial hearing." *Liability Investigative Fund Effort, Inc.* v. *Medical Malpractice Joint Underwriting Ass'n of Mass.*, 409 Mass. 734, 751 (1991). Cf. *Columbia Chiropractic Group, Inc.* v. *Trust Ins. Co.*, 430 Mass. 60, 62 (1999) (discussing factors underlying doctrine of primary jurisdiction, but concluding doctrine did not apply in that case).

Ford will use SAE J839 to test compliance with the inertia requirement of FMVSS 206 — an argument we have already addressed. In any event, in the absence of any allegation of personal injury or even injury to property, we decline to adopt a rule that would expose a company to liability for failing to meet self-imposed standards that may in fact be aspirational goals conducive to the development and implementation of improved safety measures that exceed regulatory requirements. Cf. *Martel v. Massachusetts Bay Trans. Auth.*, 403 Mass. 1, 4-5 (1988) (evidence of postaccident remedial measures or postaccident investigations not admissible to prove negligence due to public policy of not discouraging repairs or safety improvements); M.S. Brodin & M. Avery, Massachusetts Evidence § 4.5, at 178 (8th ed. 2007).[18]

b. *The plaintiffs' implied warranty claim.* The plaintiffs also brought claims for breach of express and implied warranties. As noted, the judge dismissed the express warranty claim. He declined to dismiss the implied warranty of merchantability claim, because he found that the plaintiffs' allegations made out a claim that the vehicles were unmerchantable. He then questioned whether a claim of breach of the implied warranty alone should support the viability of the plaintiffs' claim under G. L. c. 93A.

As is true of a claim under G. L. c. 93A, a claim of breach of warranty requires plaintiffs to show that a defendant's conduct has caused them a loss or injury. See, e.g., *Bay State-Spray & Provincetown S.S., Inc. v. Caterpillar Tractor Co.*, 404 Mass. 103, 107-110 (1989) (claim of injury in form of economic loss). See also *Commonwealth v. Johnson Insulation*, 425 Mass. 650, 653-654 (1997) (claims of injury in form of property damage). An implied warranty claim and a c. 93A claim are based on the same economic theory of injury and the same set of alleged

---

[18]It is well established that where a plaintiff brings a negligence or products liability action to recover for a personal injury, evidence of the defendant's violation of a statute, regulation, industry standard, or even internal company standard may be admissible on the question of negligence or defective design. See, e.g., *Poirier v. Plymouth*, 374 Mass. 206, 211-212 (1978) (industry standards); *Fidalgo v. Columbus McKinnon Corp.*, 56 Mass. App. Ct. 176, 184 (2002) (same); *Resendes v. Boston Edison Co.*, 38 Mass. App. Ct. 344, 357-358 (1995) (defendant company's internal standards). This case is different, because the plaintiffs affirmatively claim they have not suffered personal injuries. See note 17, *supra*.

facts, they should survive or fail under the same analysis. In other words, in view of the interconnected nature of the plaintiffs' c. 93A and breach of implied warranty claims, the reasons that call for the dismissal of the c. 93A claim also warrant dismissal of the breach of implied warranty claim.

To summarize: on the current state of the record, the plaintiffs' complaint does not adequately set out a claim that their vehicles fail to comply with FMVSS 206 or are defective in some other way that has caused the plaintiffs to suffer an injury or loss within the scope of G. L. c. 93A, § 9. For this reason, we conclude that the defendants' motion for judgment on the pleadings was properly allowed with respect to the plaintiffs' c. 93A claim in the first count of the complaint.[19] And because the breach of implied warranty claim is factually and legally intertwined with the c. 93A claim, we further conclude that the motion also should have been allowed on the implied warranty claim, which is set out in the complaint's fourth count. We reach this result, however, on substantively different grounds than the judge. In the circumstances, we think it appropriate to give the plaintiffs the opportunity to file an amended complaint with respect to their c. 93A and breach of implied warranty claims; on remand, these counts of the plaintiffs' complaint are to be dismissed without prejudice.

3. *The standard for reviewing adequacy of complaints.* While we have concluded that the plaintiffs' complaint is insufficient on the basis of the standard described in *Nader* v. *Citron,* 372 Mass. 96, 98 (1977), see note 7, *supra,* we take the opportunity to adopt the refinement of that standard that was recently articulated by the United States Supreme Court in *Bell Atl. Corp.* v. *Twombly,* 127 S. Ct. 1955 (2007). See *Eigerman* v. *Putnam Invs., Inc.,* 450 Mass. 281, 286 n.7 (2007) (noting that this court may consider adopting *Bell Atl. Corp.* standard for evaluating adequacy of complaint challenged by motion to dismiss for failure to state claim pursuant to rule 12 [b] [6]).

The Supreme Court ruled that the often-quoted language in *Conley* v. *Gibson,* 355 U.S. 41, 45-46 (1957) — "a complaint should not be dismissed for failure to state a claim unless it ap-

---

[19]We do not today address potential defense arguments based on either preemption or primary jurisdiction, as they are not before the court.

pears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" — had "earned its retirement." *Bell Atl. Corp.* v. *Twombly,* 127 S. Ct. at 1969. The Court pointed out that under *Conley*'s "no set of facts" standard, "a wholly conclusory statement of claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." *Id.* at 1968. As the Court stated, "While a complaint attacked by a . . . motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions . . . . Factual allegations must be enough to raise a right to relief above the speculative level . . . [based] on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ." *Id.* at 1964-1965. What is required at the pleading stage are factual "allegations plausibly suggesting (not merely consistent with)" an entitlement to relief, in order to "reflect[] the threshold requirement of [Fed. R. Civ. P.] 8(a)(2) that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief.' " *Id.* at 1966.

We agree with the Supreme Court's analysis of the *Conley* language, which is the language quoted in our decision in *Nader* v. *Citron, supra,* and we follow the Court's lead in retiring its use. The clarified standard for rule 12 (b) (6) motions adopted here will apply to any amended complaint that the plaintiffs may file.

4. *Conclusion.* The order allowing the defendants' motion for judgment on the pleadings with respect to Counts II, III, and V of the plaintiffs' amended complaint is affirmed; the order allowing the defendants' motion as to Count I and denying the motion as to Count IV is reversed. On remand, Counts I and IV of the amended complaint are to be dismissed without prejudice. The case is remanded for further proceedings consistent with this opinion.

*So ordered.*

Cowin, J. (concurring in part and dissenting in part). I concur

in the court's opinion except for that portion of the disposition that provides that Counts I and IV of the amended complaint are to be dismissed without prejudice. As the court observes, the plaintiffs, if their allegations are true, had a cause of action under G. L. c. 93A for the diminution in value of their vehicles resulting from an alleged unfair or deceptive act or practice. For whatever reason, they failed to allege facts sufficient to satisfy applicable pleading requirements. That failure was not because of any error of the motion judge or any surprises visited on the plaintiffs by this court's opinion. I therefore see no principled reason why this action should not be consigned the same fate as that of any proceeding in which the initial pleading on its face entitles the claimant to no relief.