Kenton-Walker, Janet, J.
Plaintiffs, all residential and business customers of defendant Fitchburg Gas and Electric Light Company (“FG&E”), bring this action against FG&E to recover damages allegedly sustained due to FG&E’s inadequate response to the ice storm that occurred in Western Massachusetts on December 11 and 12, 2004.[2] Plaintiffs’ complaint alleges claims of negligence/gross negligence (Count I), breach of contract (Count II), unjust enrichment (Count III), violations of G.L.c. 93A, §§2 and 9 (Count IV), and violations of G.L.c. 93A, §§2 and 11 (CountV). FG&E now moves to dismiss the complaint in its entirety pursuant to Mass.R.Civ.P. 12(b)(6). After hearing, and for the reasons set forth below, FG&E’s motion is ALLOWED in part and DENIED in part.
BACKGROUND
Plaintiffs’ complaint alleges the following facts. Plaintiffs are residential and business customers or users of electricity provided by FG&E, an electrical service provider in the municipalities of Fitchburg, Lunenberg, Townsend, and Ashby. On December 11 and 12, 2008, these towns, as well as others, suffered an ice storm, during which all of FG&E’s customers lost power. The power outage lasted for up to two weeks and beyond for some customers. Plaintiffs assert FG&E was inadequately prepared for the ice storm in a number of ways, including: (1) it failed to adequately maintain and manage its systems; (2) its vegetation and tree cutting program was deficient; (3) it had an inadequate plan in place to respond to an emergency, resulting in a poor response to the storm and a prolonged outage. Plaintiffs allege FG&E should have anticipated the eventuality of a serious storm and been better prepared for a resulting outage, and that its failure to do so caused the massive power outage and prolonged the restoration of service. They assert that FG&E’s mismanagement of efforts to restore power also prolonged the outage.
According to Plaintiffs, FG&E impliedly represented to its customers and consumer users that its vegetation and/or tree cutting program was adequate and that it had an adequate plan and resources to respond to a serious storm and resulting power outage, while in reality it knew or should have known its systems and response plans were inadequate and unreliable. By not setting up sufficient systems, FG&E maximized its profits at the expense of its customers and consumer users. Plaintiffs further claim that, during and in the aftermath of the outage, FG&E made false statements to municipal officials, customers, business and consumer users, and the media; failed to communicate accurate information; failed to include town and area specific information in most messages by using technical terms; and constantly changed messages about when restoration would be accomplished.
As a result of FG&E’s wrongful conduct, Plaintiffs allege they have sustained damage in the form of spoilage of food, damage to property, temporary housing costs, emotional and physical pain and suffering, loss of use of property, loss of business income, as well as other expenses.
DISCUSSION
To survive a motion to dismiss pursuant to Mass.R.Civ.P. 12(b)(6), a complaint must set forth the basis of the plaintiffs entitlement to relief with “more than labels and conclusions.” Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008), quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). While factual allegations need not be detailed, they “must be enough to raise a right to relief above the speculative *109 level . . . [based] on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . Id., quoting Bell Atl. Corp., 550 U.S. at 555. At the pleading stage, Mass.R.Civ.P. 12(b)(6) requires that the complaint set forth “factual ‘allegations plausibly suggesting (not merely consistent with)’ an entitlement to relief . . .” Id., quoting Bell Atl. Corp., 550 U.S. at 557.
I.Judicial Notice
Plaintiffs submitted a CD-ROM containing initial briefs and reply briefs from both the Attorney General and FG&E related to the Massachusetts Department of Public Utilities (“DPU”) investigation into the storm and FG&E’s conduct. Plaintiffs ask the court to take judicial notice of these briefs. The court declines to do so and does not consider them in deciding the motion to dismiss. Although the court may take judicial notice of the fact that the briefs were filed and that an investigation is ongoing at the DPU, the briefs contain disputed allegations that are not facts properly subject to judicial notice.
The court does, however, take judicial notice of FG&E’s “Terms and Conduction for Distribution Service,” the Tariff issued to it by the DPU and submitted to the court with FG&E’s motion to dismiss. Although Plaintiffs challenge the Tariffs manner of application to the present case, they do not challenge its authenticity. As the Tariff is a public record, and was accompanied by a Keeper of the Records certification from the Secretary of the DPU, the court takes judicial notice of it. See Reliance Ins. Co. v. Boston, 71 Mass.App.Ct. 550, 555 (2008), quoting Schaer v. Brandeis Univ., 432 Mass. 474, 477 (2000) (matters of public record may be taken into account when evaluating a Rule 12(b)(6) motion to dismiss); see also Watterson v. Page, 987 F.2d 1, 3 (1st Cir.1993) (public records and other documents, the authenticity of which is not disputed, may be considered in weighing a motion to dismiss).
II.Force Majeure Clause of FG&E ‘s Tariff
FG&E first argues that all counts of Plaintiffs’ complaint must be dismissed because the Tariff approved by the DPU, pursuant to which FG&E operates, contains a force majeure clause that specifically exempts FG&E from any liability caused by its failure to perform “by reason of storm.” The Tariff provides, “The Company shall be excused from performing . . . and shall not be liable in damages or otherwise if and to the extent that it shall be unable to do so or prevented from doing so ... by reason of storm ...”
While the court acknowledges the validity of the Tariff, it is not persuaded by this argument. Although the storm played a role in the initial outage, the damages for which Plaintiffs seek compensation are alleged to have been caused by FG&E’s failure to put in place adequate tree-cutting and emergency response programs, as well as its alleged failure to adequately respond to and repair the damage caused by the storm in a timely fashion. Hence, Plaintiffs’ claims are not precluded by the force majeure clause contained in the Tariff
III.Negligence/Gross Negligence
To the extent Plaintiffs allege simple negligence, their claim must be dismissed, as FG&E’s Tariff relieves FG&E of liability for simple negligence. Section 9F of the Tariff provides, “The Company shall not in any event except that of its own gross negligence or willful acts, be liable to any party for any direct, consequential, indirect or special damages, whether arising in tort, contract or otherwise, by reason of any services performed or undertaken to be performed, or a [sic] actions taken by the company, or its agents or employees, under the Schedule of Rates or in accordance with or required by law.” This language immunizes FG&E from liability for simple negligence. The court concludes, however, that the allegations contained in Count I of the complaint are sufficient to make out a claim of gross negligence. Such being the case, to the extent Count I alleges gross negligence, it survives the motion to dismiss.
IV. Breach of Contract
FG&E next argues Plaintiffs’ breach of contract claim must be dismissed because there is no contractual relationship between the parties. This court agrees. As a matter of law, FG&E’s Tariff does not create a contract, either express or implied, between FG&E and Plaintiffs. The relationship between FG&E and its customers is defined exclusively by the Tariff. See Wilkinson v. New England Tel & Tel. Co., 327 Mass. 132, 135 (1951) (once issued, a tariff becomes an “integral part of the relationship which the [ratepayer] entered into with the [utility], and the obligations of the [utility] are limited by that regulation if it is a reasonable one”). “[T]he extensive legislative regulation of [a utility’s] rates and practices takes the furnishing of electricity out of the realm of contract law.” FMR Corp. v. Boston Edison Co., 415 Mass. 393, 396 (1993), citing Boston Edison Co. v. Boston, 390 Mass. 772, 776-77 (1984). For this reason, Plaintiffs’ breach of contract claim must be dismissed.
V. Unjust enrichment
Plaintiffs’ unjust enrichment claim must also fail. This count alleges that while Plaintiffs made electric rate payments to FG&E, FG&E failed “to spend sufficient sums of money to adequately maintain and manage its systems, have an adequate vegetation and/or tree cutting program and properly respond to a serious storm and resulting power outage,” resulting in FG&E being unjustly enriched at the expense of Plaintiffs. Even if Plaintiffs can prove the elements of unjust enrichment, this court is not the appropriate forum for relief. FG&E’s rates and return on investment are set by the DPU pursuant to procedure set forth in G.L.c. 164, §94. Plaintiffs’ proper recourse for *110 a claim related to their payment of rates is to seek relief under G.L.c. 164, §93, which requires the DPU to hold a hearing upon the “written complaint of. . . twenty customers . . . either as to the quality or price of the gas or electricity sold and delivered.” Such being the case, this court is not the proper forum to challenge the appropriateness of FG&E’s earnings, and a claim for unjust enrichment is improper where Plaintiffs have other means of redress. See Santagate v. Tower, 64 Mass.App.Ct. 324, 329 (2005) (“An equitable remedy for unjust enrichment is not available to a party with an adequate remedy at law”).
VI. Violations of G.L.c. 93A
FG&E finally argues that Plaintiffs’ claims under G.L.c. 93A must be dismissed because they allege neither unfair nor deceptive conduct. An act or practice may be unfair if it is “(1) within the penumbra of a common law, statutory, or other established concept of unfairness; (2) immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to competitors or other business people.” Morrison v. Toys “R” Us, Inc., 441 Mass. 451, 457 (2004), quoting Heller Fin. v. Insurance Co. of N. Am., 410 Mass. 400, 408 (1991). Meanwhile, “an act or practice is deceptive if it possesses ‘a tendency to deceive.’ ” Leardi v. Brown, 394 Mass. 151, 156 (1985), quoting Trans World Accounts, Inc. v. F.T.C., 594 F.2d 212, 214 (9th Cir. 1979).
As the court has already explained, FG&E’s Tariff limits FG&E’s liability to damages caused by “its own gross negligence or willful acts.” Plaintiffs’ G.L.c. 93A counts, however, allege FG&E acted knowingly and willfully. Their allegations that FG&E knew its storm preparedness and response systems and plans were completely inadequate, but did nothing to remedy those deficiencies, are sufficient to rise to the level of unfair or deceptive acts or practices to sustain a G.L.c. 93A claim based on the standard announced in Iannacchino, 451 Mass. at 636.
ORDER
For the foregoing reasons, it is hereby ORDERED that defendant FG&E’s motion to dismiss be:
1. ALLOWED as to Count I insofar as it alleges simple negligence and DENIED insofar as it alleges gross negligence;
2. ALLOWED as to Count II (breach of contract);
3. ALLOWED as to Count III (unjust enrichment); and
4. DENIED as to Counts IV & V (G.L.c. 93A).

Plaintiffs purport to bring suit as a class. As the class has yet to be certified, however, the court analyzes their claims as being brought by individual plaintiffs.