Tucker, Richard T., J.
This action arises out of alleged injuries suffered by the plaintiffs, twelve residential and business customers of the defendant, Fitchburg Gas and Electric Light Company (“FG&E”), during a major ice storm in 2008. The plaintiffs, on behalf of themselves and those similarly situated, assert claims of gross negligence (Count I) and violations of G.L.c. 93A, §§9(2) and 11 (Counts IV and V) against FG&E. This action is now before the court on: (1) the plaintiffs’ renewed motion for class certification on their G.L.c. 93A claims; and (2) the parties’ cross motions for partial summary judgment on Counts IV and V. For the reasons set forth below, the motion for class certification is ALLOWED and the cross motions for partial summary judgment are DENIED.
FACTUAL BACKGROUND AND RELEVANT PROCEDURAL HISTORY
For the purposes of these motions, the court adopts the facts set forth, in detail, in Bellerman v. Fitchburg Gas and Elec. Light Co., 470 Mass. 43 (2014), and Bellerman v. Fitchburg Gas and Elec. Light Co., 2013 WL 518526 (Mass.Super. 2013) (Wilkins, J.) [31 Mass. L. Rptr. 123], and adds the following relevant facts.
FG&E is a public utility company owned by Unitil Corporation that provides electric service to customers in the municipalities of Fitchburg, Lunenberg, Townsend, and Ashby. It operates pursuant to its Tariff filed with the Massachusetts Department of Public Utilities (“DPU”). As FG&E’s customers, the plaintiffs have all paid for the package of utility services that FG&E has been authorized to provide, including reliable electric service.
On January 7, 2009, the plaintiffs, who lost power during a major ice storm in December of 2008, filed suit, on behalf of themselves and those similarly situated, against FG&E for damages and injunctive relief arising out of FG&E’s allegedly inadequate preparation and response to the storm. In a decision dated September 2, 2009, this court (Kenton-Walker, J.) dismissed several counts for failure to state a claim upon which relief can be granted [26 Mass. L. Rptr. 107]. The court left two counts for adjudication: the gross negligence claim (Count I) and violations of G.L.c. 93A, §§9(2) and 11 (Counts IV and V, respectively).
The parties then filed cross motions for partial summary judgment as to the G.L.c. 93A claims.[2] Additionally, pursuant to G.L.c. 93A, §§9(2) and 11, and Mass.R.Civ.P. 23, the plaintiffs moved to certify a class consisting of FG&E’s residential and business customers; their dependents, tenants, and employees; and other users of electricity who sustained damages as a result of FG&E’s inadequate preparation for and response to the storm.
After a combined hearing on the motions, this court (Wilkins, J.) issued decisions on both class certification and the summary judgment motions.[3] The court denied the plaintiffs’ motion for class certification and FG&E’s motion for summary judgment. With regard to the plaintiffs’ summary judgment motion, the court determined that the application of offensive issue preclusion to DPU’s findings was appropriate. However, the court found that the application of issue preclusion was not enough to satisfy the plaintiffs’ burden under Mass.R.Civ.P. 56.
Upon the plaintiffs’ request, the motion judge then reported his decision denying class certification to the *2 Appeals Court pursuant to Mass.R.Civ.P. 64(a). FG&E sought interlocutory review, pursuant to G.L.c. 231, §118, as to the question of issue preclusion. A single justice of the Appeals Court allowed the petition for interlocutory review, and the appeals were consolidated in the Appeals Court. The Supreme Judicial Court (“SJC”) granted the plaintiffs’ application for direct appellate review.
The SJC affirmed the trial court’s application of issue preclusion to the facts found after DPU’s eviden-tiary hearings.[4] It similarly affirmed the motion judge’s decision declining to certify a class pursuant to both Rule 23 and G.L.c. 93A. The SJC observed, however, that a theory of injury exists that would warrant class certification under c. 93A. Specifically, in footnote 10 of the Bellerman decision, the SJC suggested that the plaintiffs may have another potential theory of recovery: that they paid for a level of emergency preparedness, efficient restoration, and accurate information that FG&E unfairly and deceptively failed to provide. Pursuant to this theory, the plaintiffs now seek to certify the following classes pursuant to Counts IV (violation of G.L.c. 93A, §9(2)) and V (violation of G.L.c. 93A, §11):
1. All residential customers of FG&E from January 7, 2005 until January 7, 2009; and
2. All business customers of FG&E from January 7, 2005 until January 7, 2009.[5]
The parties also bring cross motions for partial summary judgment on the plaintiffs’ c. 93A claims.
DISCUSSION
I. Motion for Class Certification Pursuant to G.L.c. 93A
When considering class certification under c. 93A, “a judge must bear in mind that our consumer protection statute was designed to meet a pressing need for an effective private remedy for consumers, and that traditional technicalities are not to be read into the statute in such a way as to impede the accomplishment of substantial justice.” Fletcher v. Cape Cod Gas Co., 394 Mass. 595, 605-06 (1985) (internal quotations and citation omitted). The plaintiffs “do not bear the burden of producing evidence sufficient to prove that the requirements [of class certification] have been met, but need only provide information sufficient to enable the motion judge to form a reasonable judgment that the class meets the relevant requirements.” Bellerman, 470 Mass, at 51-52 (internal quotations and citation omitted). Furthermore, the issue of class certification may be revisited and class status may be withdrawn or appropriately modified if the class representatives cease to fairly and adequately represent the interests of the class. Aspinall v. Philip Morris Cos., Inc., 442 Mass. 381, 398 n.22 (2004).
Certification of a G.L.c. 93A class action requires findings that: “the use or employment of the unfair or deceptive act or practice has caused similar injury to numerous other persons similarly situated”; that the class representative “adequately and fairly represents such other persons”; and that the class representative brings “the action on behalf of himself and such other similarly situated persons.” G.L.c. 93A, §9(2). In the certification decision, Judge Wilkins determined that the proposed class was numerous and that individual plaintiffs proffered sufficient information to show unfair and deceptive conduct by FG&E against all its customers, but concluded that they had not shown that such conduct caused “similar injury” to the putative class members. See Bellerman, 2013 WL 485670, at *3. In accordance with the third possible theory of recovery articulated by the SJC, the plaintiffs now argue that the plaintiffs and the putative class members sustained a “similar injury” because they paid for a level of service that purported to comply with G.L.c. 164 and DPU’s requirements, but received non-compliant service. See Bellerman, 470 Mass. at 54 n. 10. To support this theory, they rely on Iannacchino v. Ford Motor Co., 451 Mass. 623, 630-33 (2008), and Aspinall, 442 Mass. at 396-97, both of which involve claims of economic injury based on the theory of “overpayment” for noncompliant product.
In the opposition to the motion for certification, FG&E argues that the plaintiffs had already indirectly argued the theory of “overpayment” in their “failed” appeal to the SJC. It also contends that the plaintiffs have no right to sue in court to challenge the DPU-established rates.[6] Finally, it maintains that the “renewed” certification motion fails because the causation and injury elements require an individualized analysis that makes certification under G.L.c. 93A inappropriate.
This court disagrees with FG&E that the plaintiffs’ present theory has already been presented and rejected by the SJC in its October 30, 2014 opinion. The SJC specifically identified the two theories of injury upon which the plaintiffs sought certification: “(1) prolonged power outages caused by FG&E’s failure to restore power more expeditiously, and (2) an inability to plan for the widespread and extended outages due to FG&E’s unfair and deceptive communications system.” Bellerman, 470 Mass. at 54. The court then proceeded to identify the third possible theory of injury:
In their brief, the plaintiffs indicate a third possible theory of injury: that they paid for a level of emergency preparedness, efficient restoration, and accurate information that FG&E unfairly and deceptively failed to provide. Where a defendant’s unfair or deceptive conduct causes customers to receive a product or service worth less than the one for which the customers paid, the customers may pursue a class action under G.L.c. 93A to recover the amount by which they overpaid. See Iannacchino v. Ford Motor Co., 451 Mass. 623, 630-31 (2008) (purchasers of motor vehicles could potentially certify class *3 to recover overpayment for vehicles that unfairly or deceptively did not meet regulatory safety standards); Aspinall v. Philip Morris Cos., 442 Mass. 381, 397-99 (2004) (purchasers of light cigarettes could pursue class to recover difference between market price of cigarettes as sold and true market value of such cigarettes had they not been deceptively advertised). In their motion for class certification, however, the plaintiffs did not seek to recover the amount by which they purportedly overpaid, focusing instead on their alleged damages associated with the power outages. Cf. Aspinall v. Philip Morris Cos., supra at 397 & n.19 (distinguishing class seeking to recover for personal injuries caused by defendant’s deception, which would not have supported class treatment).
Id. at n.10 (emphasis added).
Here, consistent with Iannachino, the plaintiffs have provided sufficient information to allow this court to form a reasonable judgment that the plaintiffs paid for a level of electric service during the class period (January 7, 2005-January 7, 2009) that failed to meet the standards legally required and enforced by the DPU. See Iannachino, 451 Mass. at 629. This court has already found that such service includes not only the electricity but “[FG&E’s] efforts to fulfill its public service obligations.” Bellerman, 2013 WL 518526, at *11 n.6.
Unlike Rule, Hershenow and Tyler, upon which FG&E relies in support of its position, the economic injury here was fully realized; the plaintiffs and the putative class members during the class period were purchasing electricity from FG&E whose value was reduced because of the ongoing undisclosed health and safety risks. Cf. Tyler v. Michaels Stores, Inc., 464 Mass. 492 (2013) (plaintiff suffered no distinct injury or harm from store’s collection of zip codes); Hershenow v. Enterprise Rent-A-Car Co. of Boston, 445 Mass. 790 (2001) (car rental company had no occasion to seek to enforce allegedly unlawful restrictions in collision damage waiver against them where plaintiffs returned cars undamaged); Rule v. Fort Dodge Animal Health, Inc., 607 F.3d 250 (2010) (plaintiffs law suit was brought after her purchase and use of drug; risk did not manifest itself in injury to her dog). If the plaintiffs succeed at trial in establishing that FG&E knowingly sold noncompliant service and that the plaintiffs paid for more than they received, the economic injury in the form of overpayment would entitle them to redress under c. 93A pursuant to the theory of regulatory noncompliance. See Iannacchino, 451 Mass. at 631.
Similarly unavailing is FG&E’s argument that the causation and injury elements require an individualized analysis. FG&E asserts that many purported class members suffered no injury, such as those who (1) were unaffected by the storm; (2) experienced only brief interruptions in service; (3) lost power due to severity of the storm and not due to any fault of FG&E; or (4) heard estimated times of restoration that proved accurate. According to FG&E, these customers received the electric service for which they paid. This court disagrees. Under the theory of injury pursued by the plaintiffs, they need not prove individual harm in order to recover for economic injury. See Aspinall, 442 Mass, at 397 (“No individual inquiries concerning each class member’s smoking behavior are required to determine whether the defendants’ conduct caused compensable injury to all the members of the class-consumers . . . were injured when they purchased a product that, when used as directed, exposed them to substantial and inherent health risks [.]”). Where, as here, the focus is on the defendant’s deceptive conduct which caused the plaintiffs and the putative class members to purchase a service, i.e., electricity, for a price that was more than the service was worth, the plaintiffs need not prove individual harm in order to recover. See id.
Finally, with regard to FG&E’s argument that the plaintiffs’ claims must fail because the plaintiffs and the putative class members offer neither a method to prove or calculate the alleged overpayment nor any expert opinion from a qualified economist on the fact or amount of supposed overpayment, the court need not address the issue of damages at this stage of the proceedings.[7] Our courts have stated that “[w]hether plaintiffs ultimately may be successful in proving actual damages is a matter that need not be resolved at the certification stage. In the event that the plaintiffs are unsuccessful in their attempt to prove actual damages, they are entitled to recover statutory damages under G.L.c. 93A, section 9(3) [.]” Aspinall v. Philip Morris Companies, Inc., 2013 WL 7863290, at *3 (Mass.Super. 2013) (Kaplan, J.). To quote Chief Justice Gants in Olson v. Energy North, Inc., 1999 WL 1332362 (Mass.Super. 1999) [9 Mass. L. Rptr. 494]:
[T]he difficulty in . . . ascertaining the amount of damages should not defeat class certification where the alternative is to leave those aggrieved without a remedy and to permit those who allegedly perpetrated the fraud to keep the ill-gotten gains ... If liability is established, creative ways will simply need to be fashioned to disgorge the fraudulently obtained monies and distribute them equitably to the aggrieved class . . .
Id. at *6 (internal citations omitted).
In conclusion, on the record presently before this court, class certification appears appropriate. The court allows the plaintiffs’ motion for class certification pursuant to G.L.c. 93A.
II. Cross Motions for Partial Summary Judgment i. Standard of Review
Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *4 Mass.R.Civ.P. 56(c); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and that the record entitles it to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). “(A]ffirmative defenses . . . may be established upon motion ... for summary judgment when, by affidavits, depositions and admissions, a set of undisputed facts is revealed upon which the moving party is entitled to judgment as a matter of law.” Shea v. Bay State Gas Co., 383 Mass. 218, 219-20 n.3 (1981) (internal quotations and citation omitted). Alternatively,
a party moving for summary judgment in a case in which the opposing party will have the burden of proof at trial is entitled to summary judgment if he demonstrates, by reference to material described in Mass.R.Civ.P. 56(c), unmet by countervailing materials, that the party opposing the motion has no reasonable expectation of proving an essential element of that party’s case. To be successful, a moving party need not submit affirmative evidence to negate one or more elements of the other party’s claim . . . That showing having been made, the [opposing party is] required to respond by set(ting) forth specific facts showing that there is a genuine issue for trial.
Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991) (second alteration in original) (internal citation omitted). In either event, the court reviews the evidence in the light most favorable to the nonmoving party, but does not weigh evidence, assess credibility, or find facts. See Bailey, 386 Mass, at 370-71.
ii. Analysis
The plaintiffs seek partial summary judgment motion on the issue of liability for G.L.c. 93A violations. They argue that the undisputed facts in the record establish that the plaintiffs and the putative class members paid for a level of regulatory compliance that was not provided. According to them, it is undisputed that FG&E failed to comply with the DPU directives, failed to meet its public service obligation to provide safe and reliable electric service under G.L.c. 164, and did so knowingly and wilfully.
FG&E opposes, arguing that the court’s prior offensive collateral estoppel holding is not broad enough to entitle the plaintiffs to summary judgment. It points out that the plaintiffs’ arguments are “overwhelmingly dependent on [D.P.U.’s findings summarized in] D.P.U. 09-01-A (2009) and D.P.U. 11-01/02 (2011),” which, according to the plaintiffs, are “undisputed” because of the issue preclusive effect. According to FG&E, the motion judge rejected DPU’s findings as a predicate for awarding the plaintiffs summary judgment under their then-operative c. 93A theory. Specifically, FG&E points out that “the DPU’s findings, even if accepted, were not enough to render summary judgment in plaintiffs’ favor two years ago, and plaintiffs offer no reason why the outcome should be different today.”
This court agrees with FG&E that the record does not support the plaintiffs’ assertions that the question of FG&E’s liability is “undisputed.” While, in the summary judgment decision, Judge Wilkins did in fact state that “(a]t this stage of the proceedings, the Court is satisfied that the use of offensive issue preclusion is appropriate,” Bellerman, 2013 WL 518526, at *19, he limited the scope of offensive collateral estoppel by stating that it would not “consider the DPU findings as establishing anything more than the scope, nature, strengths and shortcomings of the Company’s response to Winter Storm 2008 and the adequacy of that response in light of the regulatory directives and other guidance that the Company had before and during the storm.” Id. at *18.
Judge Wilkins further explained that, despite the preclusive effect of DPU findings, there would still be questions of fact to be determined at trial because “(u]nder the tests described above, . . . inadequate preparation by itself is little more than negligence (or gross negligence), which is not enough to show a c. 93A violation.” Id. at *19. The court noted that “(i]f this case goes to trial, the trial judge will continue to have discretion to make a final decision as to what issues are already determined and what issues remain for trial.” Id. This court agrees with Judge Wilkins that here, questions of fact remain on the issue of FG&E’s deceptive intent with regard to the level of its efforts to prepare for a major storm. It is for the trier of fact to determine whether any actions or non-actions of FG&E were “wilful or knowing.” Accordingly, this court finds that summary judgment is inappropriate on the issue of liability pursuant to G.L.c. 93A.
In their cross motion for summary judgment, FG&E argues that the plaintiffs’ overpayment theory challenges DPU’s rate making authority and that their overpayment claim fails due to an absence of proof, expert or otherwise. These arguments lack merit. First, FG&E’s position that the plaintiffs are usurping the DPU’s authority to establish rates is misinterpreting the nature of the plaintiffs’ claims. The plaintiffs are not alleging mistake or unreasonableness in the rates; the nature of the allegations concerning the FG&E’s deceptive misrepresentation is that the service was compliant with DPU’s requirements and FG&E’s public service obligations. See Lowell Gas Co. v. Attorney Gen., 377 Mass. 37, 39-40 (1979).
Second, FG&E’s contention that the plaintiffs’ overpayment claim fails in the absence of any evidence to support the allegation that the plaintiffs suffered an injuiy by merely paying a utility rate is equally unsuccessful. The plaintiffs’ attempt to distinguish Iannacchino from the case at hand is at odds with the SJC’s position on the availability of the “overpayment” theory of injury to the plaintiffs who allege that they have paid for more in terms of quality and reliability *5 of service than they received. See Iannacchino, 451 Mass. at 631.
Finally, with regard to damages, if the plaintiffs can establish “a cognizable loss caused by a deceptive act,” G.L.c. 93A, §9 “eliminates the need to quantify an amount of actual damages.” Hershenow, 445 Mass at 799 n.18. See also Chery v. Metropolitan Prop. & Cas. Ins. Co., 79 Mass.App.Ct. 697, 700 (2011) (plaintiffs are “not required to show a quantifiable amount of actual damages” as long as they show that they “suffered some loss caused by the defendant’s allegedly unlawful conduct”). In the event that the factfinder determines that the plaintiffs and the putative class members were injured within the meaning of G.L.c. 93A, and if the plaintiffs and the putative class members are unsuccessful in proving actual damages, they will be entitled to recover statutory damages pursuant to G.L.c. 93A, §9(3).[8] In light of the above discussion, the parties’ cross motions for summary judgments are denied.
ORDER
For the foregoing reasons, the plaintiffs’ motion for class certification pursuant to G.L.c. 93A is ALLOWED. The parties’ cross motions for summary judgment are DENIED.

 In their motion for partial summary judgment, the plaintiffs sought issue preclusive effect to certain findings made by the DPU in two prior administrative adjudications related to FG&E’s conduct during the storm. In D.P.U. 09-01-A, issued on November 2, 2009, the DPU found “numerous and systematic” deficiencies in how FG&E prepared for and responded to the storm. Among those deficiencies were: inadequate planning and training for significant emergency events: inadequate preparation for the storm: unsatisfactory damage assessment after the storm; insufficient acquisition of external repair crews; various problems that prevented FG&E from restoring service in a timely manner; a failure to provide the public with useful and accurate information, which resulted in the inability of customers to plan appropriately for an extended outage; and deficient tree-trimming practices which likely contributed to storm-related outages. See Bellerman, 470 Mass. at 50. In D.P.U. 11-01/01/02, issued on August 1, 2011, the DPU found, among other things: “We have not been faced with a situation, however, in which a company has so thoroughly mismanaged its response to a situation like Winter Storm 2008 and compromised its responsibilities to the public . . . Here, the Company demonstrated what can be fairly characterized as an egregious failure to meet its public service obligation in multiple aspects of its preparation and response to Winter Storm 2008.”

 See Bellerman v. Fitchburg Gas and Elec. Light Co., 2013 WL 485670 (Mass.Super. 2013) (Wilkins, J.) (certification decision) [30 Mass. L. Rptr. 612); Bellerman v. Fitchburg Gas and Elec. Light Co., 2013 WL 518526 (Mass.Super. 2013) (Wilkins, J.) (summary judgment decision) [31 Mass. L. Rptr. 123].

 The SJC restated the DPU’s findings as follows: “[T]he [DPU] found that [FG&E’s] lack of planning and training for a significant storm event left it unprepared to respond to the magnitude of system damage that it experienced during Winter Storm 2008. D.P.U. 09-01-A at 47 [(2009)]. The [DPU] determined that [FG&E’s] lack of planning led to: (1) its inability to restore service to its customers in a timely manner; (2) its failure to communicate accurate and useful information to the public; and (3) its failure to coordinate its restoration efforts with local public safety officials, [id.] Further, the [DPU] identified failures in: (1) [FG&E’s] pre-storm preparation; (2) external resource acquisition; (3) damage assessment; (4) communication efforts with the public, municipal officials, local safety officials, and life support customers; and (5) adherence to its tree trimming schedule!.]” Bellerman, 470 Mass, at 51 n.7.

 Excluded from the class are the defendant, its affiliates and any officers and directors thereof, as well as any judge presiding over this action, the judge’s spouse and immediate family.

 As an electric company, FG&E is under the “general supervision” of the DPU, which is responsible for “mak[ing[ all necessary examination and inquiries and keep[ing] itself informed as to . . . the manner in which [utilities] are conducted with reference to the safety and convenience of the public.” G.L.c. 164, §76.

 The plaintiffs present several theories of “damages,” including: restitution in the amount to be resolved by the factfinder, or in the alternative, in an amount equivalent to “full refund” for their electric services; disgorgement of the amount by which FG&E allegedly underfunded its vegetation management program, or in the alternative, the entirety of all FG&E’s profits obtained during the putative class period; statutory damages; and attorneys fees and costs.

 Additionally, if a business plaintiff suing under §11 suffers an adverse effect, he or she is entitled to attorneys fees and costs. See Jet Line Servs, Inc. v. American Employers Ins. Co., 404 Mass. 706, 718 (1989). Of course, a consumer plaintiff suing under §9 is entitled to attorneys fees upon recovery of even nominal damages. Id. at 718 n.12.