Ullmann, Robert L., J.
INTRODUCTION
This action arises from the firing of plaintiff Anthony Nardone (“Nardone”), an at-will employee of defendant Raytheon Company (“Raytheon”), following what Nardone alleges was whistleblowing activity protected by public policy. Raytheon has moved to dismiss Nardone’s Complaint alleging breach of the implied covenant of good faith and fair dealing (Count 1) and common-law wrongful termination (Count 2). A hearing was held on May 6, 2014. For the reasons that follow, Raytheon’s motion will be ALLOWED as to Count 1, and DENIED as to Count 2. With respect to Count 2, Nardone’s allegation that he was fired for raising concerns about possible Raytheon violations of the Sarbanes Oxley Act (“SOX”) does not state a claim for common-law wrongful termination, because SOX provides comprehensive and therefore exclusive remedies for whistleblowers. However, Nardone’s allegation that he was fired for raising concerns about possible Raytheon violations of the Truth in Negotiations Act (“TINA”) states a claim for relief.
BACKGROUND
The following facts are taken from Nardone’s Complaint, which the Court treats as true for the purposes of this motion only. In January 2005, Nardone was hired as Director, I-Program Management in the G&D-Integrated Defense Business Unit at Raytheon. In April 2008, he was promoted to Director, ISC, in the Patriots Programs Business Unit. Nardone’s performance was evaluated as “truly outstanding!” On the subject of integrity, Nardone was evaluated as “far exceeds requirements.” Complaint, 4, 5, 7.
In August 2010, Nardone conveyed to his superiors deep concerns about what he perceived to be Raytheon’s violations of TINA and SOX. Specifically, a business unit president instructed Nardone and other Raytheon employees not to finalize subcontract prices relevant to the UAE Patriot Program until negotiations with the federal government regarding the UAE Patriot Program had concluded. Nardone informed the vice president of Raytheon’s legal department that such a directive violated TINA, and that he would not comply. Nardone’s immediate supervisor acknowledged that the direction was a violation of TINA but indicated that he would not take any corrective action. Id.., 11, 12, 14.
In September 2010, Nardone received an e-mail from his immediate supervisor making suggestions about how sales figures could be improved. In summary, the e-mail suggested accelerating the delivery of materials and parts to inflate sales reports in the short-term. Nardone told his direct supervisor that those suggestions contravened Raytheon policy and SOX. Nardone’s supervisor indicated that he would not change his planned course of action. Id., 15-16.
On November 18, 2010, Nardone was terminated. The termination form stated that Nardone was being terminated based on his actions with respect to a Raytheon Office of General Counsel (“OGC”) investigation in June and July 2010, specifically that he had improperly disclosed privileged communications, lied to OGC investigators and impeded the OGC investigation. Id., 8. Nardone avers that the termination form *46 is inaccurate, and that the reasons given for his termination were a pretext for retaliation based upon his protected whistleblower activity.
DISCUSSION
A. The Legal Standard
A motion to dismiss “argues that the complaint fails to state a claim upon which relief can be granted.” Jarosz v. Palmer, 436 Mass. 526, 529 (2002), quoting J.W. Smith & H.B. Zobel, Rules Practice §12.16 (1974). In considering such a motion, the Court takes as true the allegations of the complaint, as well as such inferences as may be drawn from them in favor of the non-moving party. Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008). However, the court disregards legal conclusions cast in the form of factual allegations. Schaer v. Brandeis Univ., 432 Mass. 474, 477 (2000). To survive the motion, the complaint must contain “allegations plausibly suggesting (not merely consistent with)” an entitlement to relief, and “must be enough to raise a right to relief above the speculative level.” Iannacchino, 451 Mass. at 636, quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 557 (2007).
B. Application of the Legal Standard
1. Breach of the Implied Covenant of Good Faith and Fair Dealing
“Employment contracts contain an implied covenant of good faith and fair dealing, which limits the conditions under which employment can be terminated.” Wright v. Shiners Hosp. for Crippled Children, 412 Mass. 469, 477 n.1 (1992) (Liacos, J., dissenting) (citing supporting authorities). However, Massachusetts law limits “the application of this exception to cases in which an employer fires an employee and thereby deprives him ... of bonuses, commissions, or wages.” Id. and cases cited.
There is no allegation that Raytheon’s termination of Nardone served to deprive him of bonuses, commissions, or wages. For this reason, Nardone has failed to state a claim for breach of the implied covenant of good faith and fair dealing. To the extent that the Complaint implicitly alleges that Raytheon’s wrongful firing of Nardone deprived him of bonuses, commissions, or wages, that claim is completely redundant of his common-law wrongful termination claim, and would serve no purpose. Therefore, Count 1 of the Complaint should be dismissed.
2. Wrongful Termination in Violation of Public Policy
Nardone’s allegation that he was fired for raising concerns about Raytheon violations of SOX does not state a claim for common-law wrongful termination, because SOX provides comprehensive and therefore exclusive remedies for whistleblowers. However, Nardone’s allegation that he was fired for raising concerns about Raytheon violations of TINA states a claim for relief, because TINA does not provide such remedies.
a. Allegations of Sarbanes Oxley Act Violations
The right of action at common law for wrongful termination was created to provide a remedy for terminating an at-will employee in a manner that violates public policy. Melley v. Gillette Corp., 19 Mass.App.Ct. 511, 511-12 (1985). Ordinarily, without such a cause of action, there would be “no other way to vindicate such public policy.” Id., and cases cited.
However, to the extent that Nardone was discharged for protected activity under SOX, the statute itself provides a mechanism to enforce the public policy against such retaliation. That statute provides, in pertinent part:
No [publicly traded company] may discharge ... an employee . . . because of any lawful act done by the employee ... to provide information ... in an investigation regarding any conduct which the employee reasonably believes constitutes a violation of . . . [certain federal laws] . . . when the information ... is provided to ... a person with supervisory authority over the employee . . .
18 U.S.C. §1514A(a).
“In passing SOX, Congress aimed to create comprehensive legislation to fill the gaps in a patchwork of state laws governing corporate fraud and protections for whistleblowers.” Day v. Staples, Inc., 555 F.3d 42, 59-60 (1st Cir. 2009). Consequently, “[i]t would be entirely inappropriate for [an employee] to be able to use a federal statute designed to address the inadequacies of state law to create a new common law cause of action under Massachusetts law.” Id. at 60. Under these circumstances, there is no need for a common-law cause of action for wrongful termination. See Mello v. Stop & Shop Cos., 402 Mass. 555, 557 (1988). See also Fauci v. Genentech, No. 06-10061, 2007 WL 3020191, at *4 (D.Mass. Oct. 2, 2007) (Steams, J.) (“[T]he Massachusetts courts have developed a logical preference that plaintiffs relying on a public policy already codified in a particular statute follow the procedures set forth in the statute, but only if the statutory remedies are comprehensive and adequate”), quoting Briones v. Ashland, Inc., 164 F.Sup.2d 228, 230 (D.Mass. 2001).
Nardone relies on Briones, 164 F.Sup.2d at 230, which determined that the Surface Transportation and Assistance Act did not displace a common-law right of action where the statute “did not grant... all the relief [the plaintiff] would be entitled to if he prevailed in his common law cause of action.” The Surface Transportation and Assistance Act offered remedies limited to “payment of compensatory damages, including back pay.” Id. However, SOX is clear that “an employee prevailing in any action [thereunder] shall be entitled to all relief necessary to make the employee whole.” 18 U.S.C. §1514A(c)(l) (emphasis added). Therefore, Nardone has failed to state a claim to the extent that he pursues common-law relief based on his termination for activity protected by SOX.
*47 b. Allegations of Truth in Negotiations Act Violations
TINA imposes requirements on those who negotiate contracts with the federal government. See 10 U.S.C. §2306a. The law contains a civil remedies provision, 10 U.S.C. §2306a(f), but no criminal sanctions.
Raytheon argues that Nardone has no claim for wrongful termination because he alleges that he was fired for reporting violations of a statute that contains only civil sanctions. Although the Court has not found any case directly on point, the relevant precedent and public policy militate in favor of allowing wrongful discharge claims based on allegations that an employee was terminated for reporting violations of TINA.[1]
In Massachusetts, “[r]edress is available for employees who are terminated for asserting a legally guaranteed right... for doing what the law requires ... or for refusing to do that which the law forbids ...” Smith-Pfeffer v. Supt. of Walter E. Fernald State Sch., 404 Mass. 145, 149-50 (1989). Nothing in the statement of that rule restricts its application only to reporting, or refusing to participate in, unlawful conduct that is criminal in nature. See Mistishen v. Falcone Piano Co., 36 Mass.App.Ct. 243, 245 (1994) (“Although the term ‘public policy’ is amorphous, the public policy exception to the at-will employment rule has been made available to employees discharged for performing important public deeds”) (internal citation omitted). Under certain circumstances, an in-house lawyer can assert a claim for wrongful discharge based on termination for reporting “explicit and unequivocal statutory or ethical norms . . . which embody policies of importance to the public at large in the circumstances of the particular case.” GTE Prods. Corp. v. Stewart, 421 Mass. 22, 29-30 & n.10 (1995).
The Court is mindful of the Supreme Judicial Court’s statement, in King v. Driscoll, 418 Mass. 576, 582 (1994), that “this court consistently has interpreted the public-policy exception narrowly, reasoning that to do otherwise would ‘convert the general rule . . . into a rule that requires just cause to terminate an at-will employee.’ ” (Additional citation omitted, ellipses in original.) However, all of the precedent cited by the Court involved internal company matters, not alleged violations of law. The plaintiff in King was fired not for reporting alleged unlawful conduct, but for participating in a shareholder derivative suit against his company. As explained by the Court in King, the “internal administration, policy, functioning, and other matters of an organization cannot be the basis for a public-policy exception to the general rule that at will employees are terminable at any time with or without cause.” Id. at 583.
Unlike the internal dispute in King, the alleged actions of Raytheon, if true, contravened clearly established public policy. TINA’s requirement that accurate prices be submitted to the government in contract negotiations for military procurement is important to the public at large. See generally Faulkner v. United Technologies Corp., 240 Conn. 576, 582 (1997) (collecting authorities commenting on the public costs associated with military procurement fraud). Preventing defense procurement fraud surely qualifies as performing an important public deed. See Mistishen, 36 Mass.App.Ct. at 245.[2]
CONCLUSION AND ORDER
Defendant Raytheon Company’s Motion to Dismiss the Complaint (Filing #3) is ALLOWED as to Count 1 of the Complaint and DENIED as to Count 2 of the Complaint. Raytheon shall file an Answer to Count 2 of the Complaint on or before June 10, 2014.

In Shea v. Emmanuel Coll., 425 Mass. 761, 763 (1997), the Court held that distinguishing between an employee who internally reported alleged violations of law and an employee who reported the same violations to public authorities would be “illogical.”

The Court notes that an agent of the U.S. Army Criminal Investigation Command has commenced an investigation into Raytheon’s alleged violations of TINA and SOX. See Plaintiffs Hearing Memorandum Regarding Raytheon Company’s Motion to Dismiss, Ex. A.