Gordon, Robert B., J.
This case arises out of a failed lending relationship between Plaintiffs Wayne and Maty Henderson and Defendant PNC Bank, N.A. Plaintiffs have filed a consumer action under state and federal fair debt collection and fair credit reporting statutes, and have additionally asserted companion statutory and common-law causes of action. Briefly stated, Plaintiffs’ First Amended Complaint advances claims against PNC Bank for its purportedly improper suspension of the Hendersons’ home equity line of credit, its allegedly wrongful handling of Plaintiffs’ efforts to refinance this line of credit before their account became delinquent, and PNC’s supposedly inaccurate and defamatory reportage of the Hendersons’ loan delinquency to credit reporting agencies.
Defendant PNC Bank has moved to dismiss seven of the nine counts set forth in the First Amended Complaint, arguing that such causes of action fail to state claims upon which relief can be granted. Applying the now familiar standard for reviewing Rule 12(b)(6) motions articulated in Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008), the Court has determined that Defendant’s motion must be ALLOWED IN PART and DENIED IN PART.[2]
DISCUSSION
1. Federal Fair Debt Collection Practices Act
In Count IV of the First Amended Complaint, the Hendersons allege that, by suspending and then failing to reinstate or approve the refinancing of their line of credit, PNC Bank violated the federal Fair Debt Collection Practices Act (FDCPA), 15U.S.C. Secs. 1692 et seq. The Court agrees that this claim must be dismissed, because PNC Bank does not meet the definition of a covered “debt collector” under the statute. See 15 U.S.C. Sec. 1692a(6) (defining “debt collector” as a business “the principal purpose of which is the collection of debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another”). *237 PNC’s principal business is undeniably consumer and commercial lending, and not third-party debt collection. See, e.g., Thomasson v. Bank One, Louisiana, N.A., 137 F.Sup.2d 721, 724 (E.D.La. 2001) (holding defendant bank not a debt collector under FDCPA because its primary purpose was consumer lending and not debt collection).
Plaintiffs evidently agree that PNC Bank does not qualify as a debt collector so defined, and acknowledge that the First Amended Complaint does not allege otherwise. Plaintiffs, however, suggest that discovery may yet reveal the Bank to fall within alternate definitional coverage under 15 U.S.C. Sec. 1692a(6). The Court expresses no opinion as to the viability of such a contention, but rules that the dismissal of Count IV shall be without prejudice to Plaintiffs’ right to re-plead their claim should discovery reveal this to be warranted.
2. Fair Credit Reporting Act
In Count v. of the First Amended Complaint, Plaintiffs allege that PNC Bank violated the federal Fair Credit Reporting Act, 15 U.S.C. Sec. 168 ls-2(b), when it negligently or willfully failed to investigate and rectify the Hendersons’ disputed loan delinquency prior to taking adverse action in respect to their home equity line of credit. This claim, however, must be dismissed, because Plaintiffs have failed to plead that they notified a consumer reporting agency of their dispute of the underlying credit report and that a thus-informed consumer reporting agency notified the “furnisher of [the] information” (te., the Bank) of the claimed inaccuracy. The Hendersons’ September 10, 2012 letter referenced in the First Amended Complaint plainly does not qualify, as Plaintiffs themselves appear to concede. Because the “information furnisher” is required to have received notice of a claimed inaccuracy from a consumer reporting agency as the predicate to a private cause of action under the statute, see 15 U.S.C. Sec. 1681s-2(b)(l), pleading such an allegation is essential to a viable claim. Several federal courts in Massachusetts have expressly so held. See Catanzoro v. Experian Info. Solutions, Inc., 671 F.Sup.2d 256, 259 (D.Mass. 2009) (“notification by a consumer reporting agency to the information furnisher is a prerequisite for liability under Sec. 1681s-2(b)(l)’j; Leet v. Cellco Partnership, 480 F.Sup.2d 422, 428 (D.Mass. 2007) (“courts have ‘uniformly’ concluded that Sec. 2(b) ‘provides a private cause of action only if the furnisher received notice from a consumer reporting agency, as opposed to the plaintiff alone, that the credit information was disputed’ ”); Islam v. Option One Mortgage Corp., 432 F.Sup.2d 181, 191 (D.Mass. 2001) (“there is no private right of action against a furnisher of information under the FCRA until the consumer notifies a credit reporting agency of an inaccuracy in his credit report and the agency then informs the furnisher”); Gibbs v. SLM Corp., 336 F.Sup.2d 1, 11 (D.Mass. 2004), aff'd, 2005 WL 5493113 (1st Cir. 2005) (same). The First Amended Complaint reflects no allegation to this effect, an omission fatal to the Plaintiffs’ claim in Count V.
In their Opposition, Plaintiffs counter that their non-reportage of the disputed inaccuracy to a consumer reporting agency — and the agency’s non-reportage of same to PNC Bank — are not facts drawn from the First Amended Complaint. True that; but because such factual elements are a sine qua non to FCRA liability on the part of the Bank, that is precisely the reason why dismissal is appropriate. Count v. shall, therefore, be dismissed, but such dismissal shall be without prejudice to Plaintiffs’ right to re-plead the claim and assert the factual allegations essential thereto should facts adduced during discovery enable it to do so.
3. Defamation
In Count IX of the First Amended Complaint, Plaintiffs allege that PNC Bank’s inaccurate reporting of their loan delinquency to credit reporting agencies was defamatory and injured their reputation. The Court concludes that this claim must be dismissed, inasmuch as it is preempted by the federal Fair Credit Reporting Act (FCRA). .
Under Section 1681t(b)(l)(F) of the FCRA, “[n]o requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies.” Regarding subject matter, Section 1681s-2 of the FCRA regulates the reporting of inaccurate information by furnishers of such information to credit agencies. See 15 U.S.C. Sec. 1681s-2(a)(l)(A) (“A person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reason to believe that the information is inaccurate”); 15 U.S.C. Sec. 1681s-2(a)(l)(B) (“A person shall not furnish information relating to a consumer to any consumer reporting agency if the person has been notified by the consumer... that the specific information is inaccurate”).
In the present case, Plaintiffs’ state law defamation claim relates directly to a subject matter regulated under Section 1681s-2 of the FCRA — viz., the alleged reporting of inaccurate credit information about the Hendersons to consumer reporting agencies. As such, the claim falls squarely within the broad preemptive purview of Section 1681t(b)(l)(F). See Islam, supra, 432 F.Sup.2d at 194 (dismissing common-law negligence claims to the extent they relied upon allegedly improper reporting of plaintiffs loan status to credit agencies); accord Macpherson v. JPMorgan Chase Bank, N.A., 665 F.3d 45, 47-48 (2d Cir. 2011) (holding malicious defamation claims based on furnishing of false information to consumer reporting agencies preempted by FCRA); Purcell v. Bank of America, 659 F.3d 622, 626 (7th Cir. 2011) (holding defamation, negli *238 gence, and invasion of privacy claims based on reporting of information to consumer reporting agency preempted by FCRA).
Plaintiffs’ contention that Section 1681h(e) of the FCRA operates to salvage defamation claims (like theirs) based on the furnishing of false information to a consumer reporting agency if such defamatory publication was made with “malice or willful intent to injure” is without merit. The text of Section 1681h(e) makes clear that it applies only if the cause of action is “based on information disclosed pursuant to section 1681g, 1681h, or 1681m” of the FCRA, or “based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report . . .” 15 U.S.C. Sec. 1681h(e). Sections 1681g and 1681h deal with the disclosure ofinformation by credit reporting agencies; and Section 1681m addresses the disclosure of information by users of the information who then take adverse action based on that information. Islam, 432 F.Sup.2d at 193-94. Here, there is no dispute that PNC Bank is not a credit reporting agency, and has not been sued in its capacity as a user of credit reports. Likewise, PNC Bank is not alleged to have taken adverse action against the Hendersons based on information contained in their credit reports. Rather, as the Court found in precisely parallel circumstances in Islam PNC Bank is the purported furnisher of false information, a fact rendering Section 1681h(e) inapplicable to the Hendersons’ claim. See Islam 432 F.Sup.2d at 194; accord Leet v. Cellco Partnership, 480 F.Sup.2d 422, 430-31 (D.Mass. 2007) (holding that Section 1681h(e) did not apply to spare negligence claim from FCRA preemption where claim was asserted against information furnisher). Accordingly, Count IX of the First Amended Complaint shall be dismissed with prejudice.
4. Mass. G.L.c. 93A
In Count III of the First Amended Complaint, Plaintiffs charge PNC Bank with unfair and deceptive acts or practices in violation of Mass. G.L.c. 93A. Plaintiffs rest their claim on two companion sets of allegations: (a) the Bank’s purportedly improper handling of their loan account {le„ suspending and refusing to reinstate their line of credit, and then failing to honor their request to extend or refinance the loan) and related unfair debt collection practices; and (b) the Bank’s furnishing of information to credit reporting agencies about the Hendersons’ loan that it knew or had cause to believe was inaccurate and incomplete. To the extent that Plaintiffs’ Chapter 93A claim relates to PNC Bank’s alleged malfeasance in reporting false information to consumer reporting agencies (category (b) above), the claim is preempted by the FCRA for the same reasons that Count IX is. See supra Defendant’s Motion to Dismiss Count III is, to that extent, allowed, and such portion of the claim shall be dismissed with prejudice.
However, as noted ante, Plaintiffs’ Chapter 93A claim in Count III extends more broadly than the allegation that PNC Bank breached its duty as a furnisher of information to consumer reporting agencies {see category (a) above). To the extent that Count III alleges that the Bank engaged in misconduct in its handling of the Hendersons’ loan account and, relatedly, committed improper debt collection practices, the claim states a potentially viable cause of action under Chapter 93A. Defendant’s Motion to Dismiss Count III shall, to this extent, be denied.
5. Mass. Debt Collection Practices Act (G.L.c. 93, Secs. 49, 54A)
Plaintiffs’ claim in Count II under the Massachusetts Debt Collection Practices Act is asserted in two parts. The first alleges that PNC Bank engaged in unfair, deceptive and unreasonable debt collection practices, in violation of G.L.c. 93, Sec. 49 and applicable regulations at 940 CMRSecs. 7.00-7.11. Defendant has not moved to dismiss this portion of Count II, and, therefore, the claim shall to this extent go forward.
Defendant has, however, moved to dismiss the second portion of the claim asserted in Count II, alleging that PNC Bank’s furnishing of information to consumer reporting agencies that it knew or had cause to believe to be inaccurate and incomplete violated Mass. G.L.c. 93, Section 54A. Defendant maintains that this claim is preempted by Section 1681t(b)(l)(F) of the FCRA. This aspect of the Defendant’s motion presents a much closer call, and brings to the fore an evolving conundrum (and a dispute among federal courts within the District of Massachusetts) as to whether private actions under Section 54A are FCRA-preempted.
As noted ante, Section 1681t(b)(l)(F) of the FCRA embodies a broad preemption provision that bars any state law claim based on conduct which is governed or regulated by Section 1681s-2 of the statute. Curiously, however, Section 1681t(b)(l)(F) carves an express exemption into state law preemption for two specific statutes in Massachusetts and California. The statute thus reads as follows:
No requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under... section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies, except that this paragraph shall not apply—
(i) with respect to section 54A(a) of chapter 93 of the Massachusetts Annotated Laws (as in effect on September 30, 1996); or
(ii) with respect to section 1785.25(a) of the California Civil Code (as in effect on September 30, 1996).
The Massachusetts statute referenced in the FCRA (and exempted from federal preemption) contains two *239 pertinent provisions. Mass. G.L.c. 93, Sec. 54A(a) provides that:
Every person who furnishes information to a consumer reporting agency shall follow reasonable procedures to ensure that the information reported to a consumer reporting agency is accurate and complete;. No person may provide information to a consumer reporting agency if such person knows or has reasonable cause to believe such information is not accurate or complete.
Inasmuch as Section 54A(a) contains no language setting forth how these two substantive statutory requirements are to be enforced at law, Chapter 93, Section 54A(g) goes on to provide a private remedial scheme as follows:
A person who furnishes information to a consumer reporting agency shall be liable for failure to comply with the provisions of this section, unless the person so furnishing the information establishes by a preponderance of the evidence that, at the time of the failure to comply with this section, such person maintained reasonable procedures to comply with such provisions.[3]
And therein lies the rub. The FCRA carves out an exception to federal preemption for matters “with respect to section 54A(a)” of the Massachusetts General Laws. But in referencing Section 54A(a) (the specific subsection of the statute that requires information furnishers to maintain reasonable procedures to ensure accuracy and completeness in their reporting, and that prohibits them from furnishing information to a credit agency which they know or have reason to believe is inaccurate or incomplete), Congress neglected or failed to exclude from preemption that particular subsection of Chapter 54A (G.L.c. 93, Sec. 54A(g)) that creates the private right of action to enforce violations of Section 54A(a). Thus, in order for the Hendersons to be able to bring a private Chapter 93, Section 54A claim against PNC Bank, the FCRA’s exception to preemption for Section 54A(a) must also be deemed to apply to Section 54A(g).
There is, to be sure, a logical disconnection between the decision by Congress to exempt from preemption the provision of Section 54A creating a duty (ie., Section 54A(a)) but not the corresponding provision of Section 54A creating an enforceable remedy for its breach (ie., Section 54A(g)). Of the four federal district court decisions in Massachusetts that have had occasion to address the question of whether or not claims under Section 54A(g) are preempted by the FCRA, three have explicitly acknowledged this troubling anomaly. See Catanzaro v. Experian Info. Solutions, Inc., 671 F.Sup.2d 256, 260 (D.Mass. 2009); Leet v. Cellco Partnership, 480 F.Sup.2d 422, 433 n.7 (D.Mass. 2007); Islam v. Option One Mortgage Corp., 432 F.Sup.2d 181, 187 (D.Mass. 2004). That said, however, as of this writing, courts within the District of Massachusetts remain divided on the question.
Two federal decisions in Massachusetts have held, with little to no substantive analysis, that the absence of express language excepting Section 54A(g) from the FCRA’s preemption provision is fatal to the survival of claims thereunder. See Leet v. Cellco Partnership, 480 F.Sup.2d 422, 433 (D.Mass. 2007) (Saylor, J.) (“In the Court’s view, the absence of express language exempting Section 54A(g) from the FCRA’s preemption provision is fatal”); Gibbs v. SLM Corp., 336 F.Sup.2d 1, 13 (D.Mass. 2004) (Saris, J., adopting the recommendation of Dein, USMJ) (“Where, as here, the FCRA does not exempt the state law provision expressly authorizing a private cause of action, such private causes of action remain preempted”). Conversely, the Court in Catanzaro v. Experian Info. Solutions, Inc., 671 F.Sup.2d 256, 260-61 (D.Mass. 2009) (Gorton, J.), reviewed the legislative histoiy of the FCRA and held that the language and logic of Section 1681t(b)(l)(F) compel the conclusion that Congress intended for claims under Chapter 93, Section 54A(g) to survive FCRA preemption and remain assertable by private action in state court.
The fourth federal district court decision in Massachusetts is Judge Young’s extended discussion of the issue in Islam v. Option One Mortgage Corp., supra, a case that produced something of a hybrid answer to the preemption question because it rested largely on a case-specific stipulation not present in other cases addressing the issue. Judge Young’s decision contains the most thorough-going analysis of the matter of any of the four cases; and, although Islam ultimately found the plaintiffs Section 54A(g) claim to be preempted, the decision’s reasoning in fact lights the path to the opposite conclusion reached by Judge Gorton in Catanzaro. This is the path the Court elects to follow in the case at bar, and its reasons follow.
In Islam, the Court rested its conclusion that Section 54A(g) claims were preempted on a relatively modest number of propositions. First, the Court noted that the legislative history of the FCRA reflected Congress’s general intent that the conduct of furnishers of consumer credit information would be regulated by state and federal government agencies rather than judges in litigation. See Islam, 432 F.Sup.2d at 189 and n.6. This fact led the Court to infer that the Chapter 93, Section 54A(a) authority preserved in Section 168 lt(b)(l)(F)’s exception must have been limited to government enforcement of that law, and that the more explicit provision for a private right of action embodied in Section 54A(g) — a provision not expressly carved out for exception — must have been intended to remain subject to preemption. This inference, however, is not entirely logical. Congress’s intentions obviously have nothing to do with what, at bottom, is a construction of Mass. G.L.c. 93, Section 54A. That is, whatever Congress may have intended in the FCRA cannot influence the actual meaning of Massachusetts law. The simple fact of the matter is that nothing in *240 the language of Section 54A(a) suggests that the Massachusetts legislature enacted that provision as a basis for government regulation of information-furnishing in the area of consumer credit.[4] This imaginative interpretation of the statute has no textual basis; and it turns out to be a conceit designed to create a logical understructure for preserving a preemption outcome that Congress evinced eveiy intention of trying to except.[5] Rather than strain to give a meaning to Section 54A that simply cannot be found in the words of the statute, the undersigned believes that the better way to reconcile the disconnection described herein is to remember that — for whatever reason— Congress chose to exempt two specific state laws from what is otherwise a broadly applicable federal preemption. Thus, whatever it may have generally intended by way of a national set of standards to govern this area of law, Congress nevertheless chose to except two particular laws of Massachusetts and California from such preemption. To exalt the goal of consistency and uniformity by construing Section 54Ain a manner that preempts most (if not all) of the claims thereunder reads the explicit exemption out of the FCRA entirely, and thus thwarts rather than promotes Congress’s evident intent.
The second pin underlying the Islam court’s reasoning is the decision in Hasvold v. First USA Bank, N.A., 194 F.Sup.2d 1228 (D. Wyo. 2002). In Hasvold, a federal district court analyzing the parallel California statute excepted from preemption in FCRA Section 1681t(b)(l)(F) concluded that private rights of action provided for in a non-referenced provision of the California Code were preempted, while the duties prescribed by the California Code provision referenced in the FCRA were subject to government enforcement only and thus preserved from preemption. The Court in Islam cited this decision in support of its own similar reading of Chapter 93, Section 54A(a). The holding of the District of Wyoming in Hasvold, however, cannot survive the Ninth Circuit’s decision in Gorman v. Wolpoff & Abramson, 584 F.3d 1147 (9th Cir. 2009), cert. denied sub nom FIA Card Servs., N.A. v. Gorman, 131 S.Ct. 71 (2010). In Gorman, a decision rendered several years after Judge Young’s ruling in Islam, the Court of Appeals flatly rejected the suggestion that California Civil Code Section 1785.25(g) — virtually indistinguishable from Mass. G.L.c. 93, Section 54A(g)— was not exempt from preemption. Although the Ninth Circuit did not distinguish or even cite Hasvold, the reasoning and result of that case have been effectively overruled by a higher authority in the governing circuit, thus undermining the force of Islam to the extent of its stated reliance on same.
Finally, the Islam Court stated that its preemption holding depended in large measure on the fact that Massachusetts government authorities appeared to possess the power to enforce Section 54A. The Court emphasized, however, that it could find no actual authorization in law for the Attorney General or any other state official to enforce this statute. Islam, 432 F.Sup.2d at 189. Indeed, the Court reviewed those specific provisions of Massachusetts law that bore most directly on the issue, and noted that no statute appeared to invest the Attorney General with such authority. See id. at 189 n.7.[6] Nevertheless, and after repeating its concern that the logic for preempting claims under Section 54A(g) would evaporate if no state official had the authority to enforce it, the Court noted that the parties had agreed during oral argument that the Massachusetts Attorney General could enforce Section 54A. On that basis, the Islam Court declared that the carve-out from preemption for Section 54A(a) contained in the FCRA had a rational meaning, and that claims under Section 54A(g) could, in turn, fairly be deemed preempted. Id. at 189. In the present case, however, the parties have not stipulated to the Attorney General’s authority to enforce Section 54A; and the Court is troubled by its own inability to locate any legal authority or factual precedent in Massachusetts for such a conclusion.[7] With no statutory basis for finding that government agencies have enforcement authority over Section 54A(a), and lacking the stipulation to this effect expressly relied upon by Judge Young, the Court observes that another foundational underpinning for the preemption ruling in Islam has ceased to exist.
Two federal district courts in Massachusetts have thus found Section 54A(g) preemption without substantial analysis, and a third has found such preemption on grounds that no longer hold. This brings us to the fourth and most recent decision of a Massachusetts federal district court — Judge Gorton’s opinion in Catanzaro v. Experian Info. Solutions, Inc., 671 F.Sup.2d 256 (D.Mass. 2009). In Catanzaro, the Court returned to first principles in its construction of FCRA Section 1681 t(b) (1) (F), and determined that the text of this preemption provision had no application to Section 54A(g) at all. The Court thus wrote:
A plain meaning interpretation of Section 1681t(b)(l)(F) (of the FCRA), which preempts all state “requirements] or prohibition[s] with respect to any subject matter regulated under Section 1681s-2,” also supports the finding that Section 54A(g) (of the statute) is not preempted by the FCRA. Although the “subject matter regulated under Section 1681s-2" is broad in scope, Section 1681t(b)(l)(F) preempts only those state laws that constitute ’’requirements" or “prohibitions.” Section 54A(g) of the Massachusetts statute is not a “requirement” or a “prohibition,” but simply a mechanism allowing private litigants to enforce a state standard for credit reporting that Congress deliberately chose not to preempt.
Catanzaro, 671 F.Sup.2d at 261.
The Court finds the reasoning of Catanzaro persuasive, and notes that it echoes the nearly identical interpretation of the FCRA adopted by the Ninth Cir *241 cuit in Gorman. Construing the cognate provisions of California Civil Code Section 1785.25(g), the Court of Appeals wrote:
[T]he district court [below] construed the statutoiy exception in isolation, disregarding the affirmative preemption language of the statute that “[n]o requirement or prohibition may be imposed” with respect to subjects regulated under Section 1681s-2. (Emphasis added.) Rather, these sections merely provide a vehicle for private parties to enforce other sections, which do impose requirements and prohibitions. In other words, Congress had no need to include these enforcement provisions in the Section 1681t(b)(l)(F) exception to save the California statutoiy scheme from preemption, because those provisions were not preempted by the affirmative language of the preemption provision. By the plain language of the statute, therefore, these sections are not preempted by Section 1681t(b)(l)(F).
Gorman, 584 F.3d at 1170-71. The foregoing analysis applies with equal force to Chapter 93, Section 54A(g). Like its California counterpart, Section 54A(g) imposes neither “requirements” nor “prohibitions,” but instead provides an enforcement mechanism for the requirements and prohibitions separately imposed by Section 54A(a). There was, therefore, no need for Congress to except this provision of the statute separately, and the reference to Section 54A(a) cannot logically be construed to reflect an intent to exclude claims under subsection (g) from the exemption to preemption.
The Court likewise agrees with Catanzaro's determination that, “because Section 54A(g) does not directly regulate the conduct of credit reporting agencies and information furnishers, it does not conflict with the FCRA’s goal of creating a uniform national credit reporting standard.” Catanzaro, 671 F.Sup.2d at 261. Accord Gorman, 584 F.3d at 1172 (“The enforcement sections do not impose inconsistent or conflicting obligations on furnishers of information; as we have noted, they impose no such requirements or prohibitions at all. As such, the enforcement provisions do not add to a patchwork of confusing obligations with which a furnisher must struggle to comply. They instead allow for additional avenues through which consumers can ensure that furnishers are complying with the obligations Congress specifically meant to impose”). Once again, this fact militates strongly in favor of construing Chapter 93, Section 54A(g) as falling within the exception to preemption provided for in 15 U.S.C. Sec. 1681t(b)(l)(F).
A final point of textual interpretation reinforces the conclusion that Congress could not have intended the veiy cramped construction of FCRA preemption adopted by the Massachusetts federal courts in Gibbs and Leet. Even if one credits the unlikely notion that Section 54A(a) is meant to be enforced by un-referenced government agencies rather than in accordance with the mechanism for private action set forth in the accompanying provisions of Section 54A(g), this would save from preemption only an extremely modest portion of the cases under the statute. The Defendant has been unable to cite the Court to even a single instance of government enforcement of this law in the many years since its enactment. As the Ninth Circuit recognized in Gorman, “exempting specific state statutes from preemption is very unusual in federal statutes. To suppose Congress would do so for little or no purpose — as would be the case if the private cause of action under California [and Massachusetts] law were preempted — is simply not plausible. See Geier v. Am. Honda Motor Co., 529 U.S. 861, 868 (2000) (‘The saving clause assumes that there are some significant number of . . . cases to save”).” Gorman, 584 F.3d at 1172. A strict reading of FCRA Section 1681t(b)(l)(F)’s reference to Mass. G.L.c. 93, Sec. 54A(a) (as impliedly excluding from the saving exception the enforcement mechanism contained in Section 54A(g) of the same statute) seems particularly dubious when one considers the rather broad language Congress employed to express the reach of this exception. Section 168 lt(b)(1)(F) provides that the FCRA’s preemption provisions shall not apply “with respect to” Chapter 93, Section 54A(a) of the Massachusetts Annotated Laws. Unlike other state statutes saved by exceptions to the federal law’s express preemption provision (which, for example, state that FCRA preemption “shall not apply to any State law in effect on September 30,1996,” see 15 U.S.C. Sec. 1681t(b)(l)(E)), Congress used the much more expansive “with respect to” phrase to refer to the preemption saving applicable to Chapter 93, Section 54A. As the Gorman Court aptly concluded, it is doubtful that Congress would have used language of this breadth to express a preemption saving intention so limited in scope. See Gorman, 584 F.3d at 1173.
In sum, the Court is confronted with a split among the federal district courts in Massachusetts on the question of the FCRA’s preemption of Chapter 93, Section 54A(g). But for the reasons set forth ante, it believes that the reasoning and result of Catanzaro, and the closely parallel position adopted by the Ninth Circuit Court of Appeals in Gorman, will ultimately carry the day when the First Circuit is called upon to resolve the matter definitively.[8] Defendant’s Motion to Dismiss Count II of the First Amended Complaint is, therefore, denied.
6. Age Discrimination Act of 1975
Plaintiffs concede that they have brought their Age Discrimination Act of 1975 claim (Count VIII of the First Amended Complaint) in the wrong forum, the statute expressly requiring that actions thereunder be brought in the U.S. District Court for the district in which PNC Bank is found or transacts business. See 42 U.S.C. Sec. 6104(e)(1). Accordingly, the Court will dismiss Count VIII, albeit without prejudice to Plaintiffs’ right to re-plead this claim in an appropriate *242 federal forum. The Court expresses no opinion as to the sufficiency of Plaintiffs’ allegations under the statute, or whether a claimed failure to satisfy administrative exhaustion requirements in all events dooms the claim procedurally. Such matters are more appropriately addressed by a court with proper jurisdiction over the claim.
7. Equal Credit Opportunity Act
In Count VII of the First Amended Complaint, Plaintiffs charge PNC Bank with violations of the Equal Credit Reporting Act (ECOA), 15 U.S.C. Sec. 1691(A). Although the Court agrees that this claim is sparsely stated, there appears to be enough substance to it to withstand Defendant’s Motion to Dismiss. At a minimum, Plaintiffs allege that the Bank violated 15 U.S.C. Section 1691(d) when it failed to notify them of its action on their credit application within 30 days, and failed to provide a written statement setting forth its reasons for the adverse action that had been taken. The ECOA provides a cause of action for a credit applicant aggrieved by such violations. See 15 U.S.C. Sec. 1691e(a), (b) and (d). The Court expresses no opinion as to the remaining theories of discrimination liability under this statute which have been put forward by Plaintiffs, believing such claims — and the Defendant’s defenses to them — are more properly addressed on a fuller evidentiary record. For present purposes, Defendant’s Motion to Dismiss Count VII of the First Amended Complaint is denied.
CONCLUSION AND ORDER
In accordance with the foregoing discussion, Defendant’s Motion to Dismiss is ALLOWED IN PART and DENIED IN PART, as follows:
(a) As to Count II of the First Amended Complaint, the Defendant's Motion to Dismiss is denied.
(b) As to Count III of the First Amended Complaint, the Defendant’s Motion to Dismiss is allowed to the extent Plaintiffs’ claim rests upon PNC Bank’s alleged furnishing of false information to consumer reporting agencies, and the claim shall be dismissed with prejudice to that extent. The Defendant’s Motion to Dismiss is denied to the extent Plaintiffs’ claim rests upon PNC Bank’s alleged mishandling of their loan account and purportedly improper debt collection practices.
(c) As to Count IV of the First Amended Complaint, the Defendant’s Motion to Dismiss is allowed and the claim shall be dismissed without prejudice.
(d) As to Count v. of the First Amended Complaint, the Defendant’s Motion to Dismiss is allowed and the claim shall be dismissed without prejudice.
(e) As to Count VII of the First Amended Complaint, the Defendant’s Motion to Dismiss is denied.
(f) As to Count VIII of the First Amended Complaint, the Defendant’s Motion to Dismiss is allowed and the claim shall be dismissed without prejudice.
(g)As to Count IX of the First Amended Complaint, the Defendant’s Motion to Dismiss is allowed and the claim shall be dismissed with prejudice.

The Court will address the Plaintiffs’ claims in the logical grouping and order of their subject matters, rather than in the numbered sequence in which they happen to appear in the First Amended Complaint.

The California statute that is exempted from preemption in the same section of the FCRA is virtually indistinguishable from Chapter 93, Section 54A. Indeed, the California law is structured the same way as well — with the requirement that a person “not furnish information ... to any consumer credit reporting agency if the person knows or should know that the information is incomplete or inaccurate” contained in Section 1785.25(a), and a mechanism for civil enforcement of this dictate contained in Section 1785.25(g) (“A person who furnishes information to a consumer credit reporting agency is liable for failure to comply with this section, unless the furnisher establishes by a preponderance of the evidence that, at the time of the failure to comply with this section, the furnisher maintained reasonable procedures to comply with those provisions”).

And the parties have been unable to cite the Court to even a single instance of such government enforcement.

As Judge Young noted, “If the Massachusetts Attorney General (or any other state official) can enforce Section 54A, then the logic of Gibbs and HasvolcL holds. If not, it is absurd to conclude that Congress would have explicitly excepted it while not leaving an enforcement mechanism.” Islam, 432 F.Sup.2d at 189.

See Mass. G.L.c. 12, Secs. 1-11L (defining duties of Attorney General): Mass. G.L.c. 93, Sec. 9 (providing for civil actions to be brought by Massachusetts Attorney General for violations of Chapter 93, Sections 4-6); Mass. G.L.c. 93, Sec. 14H (imposing duty on district attorneys to enforce violations of Chapter 93, Sections 14E-14K); Mass. G.L.c. 93, Sec. 88 (providing for Massachusetts Attorney General to enforce violations of Chapter 93, section 79); and Mass. G.L.c. 93A, Sec. 4 (providing for Massachusetts Attorney General to enforce violations of Mass. Consumer Protection Act).

The Court is not persuaded by the Defendant’s citation to the Massachusetts Division of Banks’ general regulatory authority over lending institutions such as PNC Bank. This is not the type of government enforcement Congress could have been relying upon to preempt private causes of action against information furnishers under Section 54A(g), while exempting from preemption agency regulation of such information furnishers under Section 54A(a).

Like the Court in Catanzaro, the undersigned has attached no significance to the First Circuit’s affirmance of the preemption decision in Gibbs v. SLM Corp., supra. The recommendation of Magistrate Judge Dein approved by Judge Saris contained virtually no analysis of this unusual Section 54A(g) preemption issue; and the First Circuit’s subsequent affirmance was itself unpublished and summary in nature. As Judge Young acknowledged in Islam, “the First Circuit did not undertake an exhaustive — or even limited — review of Section 1681t(b)(l)(F).” Islam, 432 F.Sup.2d at 187. Thus, notwithstanding the fact that unpublished opinions of the First Circuit are ordinarily accorded “great care and respect,” id. at 187 n.5 (citations omitted), there is in this instance no reason to believe that the First Circuit’s summary affirmance of Gibbs reflects the considered view of the Court of Appeals on the matter of Chapter 93, Section 54A(g)’s preemption (vel non) by the FCRA.