Kaplan, Mitchell H., J.
The claims that remain for trial following all motions for summaiy judgment are set out in an Order issued on May 13, 2016. As all of the remaining claims are counterclaims, for simplicity, plaintiffs-in-counterclaim will be referred to simply as “plaintiffs” and the defendants-in-counterclaim as “defendants.” The defendants have filed expert witness disclosures in which they announce their intention to offer the expert testimony of Myron T. Steel, an attorney with the Wilmington, Delaware law firm Potter, Anderson & Corroon, and David E. Brown, managing partner of the consulting firm RMPI Consulting, LLC. The case is now before the court on the plaintiffs’ motion to exclude their testimony. PlaintiffVBenx also seeks to recover the amounts that it was required to advance Finnegan for the fees paid to these experts by further establishing that these expert witness fees were not reasonably incurred because there was no *432 reasonable likelihood that their testimony would be admitted at trial. See paper no. 266.
DISCUSSION
The allegations of the 46-page Amended Counterclaims have been summarized in several prior opinions and will not be repeated here. For purposes of this motion it is sufficient to note that the principal claims are (1) breach of fiduciary duty asserted against Finnegan for acts undertaken prior to January 10, 2010 while he was Chairman of the Board of VBenx and (2) malicious prosecution asserted against Finnegan and Phillips based upon the filing and prosecution of their complaint in this action and this court’s adverse prior decision after a jury-waived trial, now affirmed on appeal. The breach of fiduciary duty claim is premised principally upon the surreptitious purchase of a note from Baytree on which VBenx is the debtor and efforts to accelerate and enforce that note against VBenx and the filing of the law suit that is the basis for the malicious prosecution claim. The court will review each of the proposed expert opinions separately.
Myron T. Steele
Mr. Steel was previously a Justice and then Chief Justice of the Delaware Supreme Court. Prior to that he served as a Vice Chancellor of the Delaware Court of Chancery and a judge in the Delaware Superior Court. He is indisputably an expert on Delaware corporate law and related litigation in the Delaware courts.
In rendering his opinion, Mr. Steele reviewed only the complaint, amended complaint, amended counterclaims, second verified complaint, and Findings of Fact, Rulings of Law and Order for Entry of Judgment (Lauriat, J.) all entered in this case. He also read the brief that the defendants filed with the Appeals Court in the unsuccessful appeal of the Final Judgment entered against them. In his opinion Mr. Steele points out that he has no direct knowledge “of the facts underlying the dispute,” and “I take the facts and allegations as presented to me.” He reviewed no trial and depositions transcripts or the hundreds of related exhibits. His report is conspicuous for its omission of any discussion of any facts relevant to the counterclaims.
Mr. Steele offers five “Opinions and Observations.” They are as follows: (1) “Corporate statutory disputes, including disputes over board composition and stock issuances, are expected, are prevalent, and are necessary to ensure proper corporate governance”; (2) “Breach of fiduciary duty claims are prevalent, are expected, and are necessary to ensure proper corporate governance”; (3) “Corporate statutory and breach of fiduciary duty disputes can be complex and based on strongly contested factual allegations"; (4) “The claims in the second verified amended complaint appear colorable and likely would have survived a motion to dismiss in Delaware”; and (5) “Corporate statutory and breach of fiduciary duty disputes rarely give rise to successful claims for malicious prosecution in Delaware courts.”
Notably, Mr. Steele’s commentary that follows the first three of the Opinions and Observations says not a word about the facts of the present controversy or the merit of the claims brought by Finnegan and Phillips in this case. The Opinions and Observations and related commentary are broad pronouncements of principles that appear indisputable and, from this judge’s perspective, equally applicable to corporate governance disputes arising under Massachusetts as well as Delaware law. They offer no observations or opinions whatsoever concerning whether the litigation brought by the defendants in this case was supported by any documents or testimony. The fact that many claims regarding corporate governance and stock issuance are filed in good faith and often meritorious, help to advance the law of corporate governance, are legitimately factually complex, and high stakes, complex litigation would be of no help to a factfinder in deciding if the instant case is a case of that kind or was, conversely, entirely frivolous and litigated in bad faith in an effort to regain control of VBenx. To the extent Mr. Steele’s testimony were taken by a factfin-der to suggest that because many litigations of this nature filed in Delaware are important, good faith disputes, the defendants’ case was as well, this would be misleading. Indeed, although these broad, generalized opinions are undoubtedly correct, their capacity to confuse the factfinder is apparent. They could provide a patina of substance to the defendants’ claims when they actually say nothing about them.[1]
An opinion based on an expert’s specialized knowledge may be presented at trial if, among other things, it “will help the trier of fact to understand the evidence or to determine a fact in issue.” See Mass. Guide to Evidence, Section 702(a) (2016 Ed.). In this case, the proposed expert testimony has a far greater tendency to confuse or prejudice than it does to assist the finder of fact. Indeed, the fact that there is nothing improper in this genre of litigation can easily be explained to the jury in the judge’s instructions on the elements of a claim for malicious prosecution.
As to the fourth Opinion and Observation, here Mr. Steele opines that in his opinion the complaint filed by the defendants would have survived a motion to dismiss in a Delaware court. Strictly speaking, that Opinion does not fit the facts of this case, as the complaint was filed in the Massachusetts Superior Court. While the Massachusetts court must apply Delaware substantive law to matters relating to the governance of a corporation organized under the laws of Delaware, the Massachusetts Supreme Judicial Court (SJC) has directed that the standard to be used in ruling upon motions brought under Mass.R.Civ.P. 12(b)(6) is whether the factual allegations in the complaint plausibly suggest an entitlement to relief. See Iannacchino *433 v. Ford Motor Co., 451 Mass. 623, 635-36 (2008). This distinction between Massachusetts and Delaware law is, in any event, not material to any issue raised by this case.
The plaintiffs do not contend that the allegations of the complaint failed to state a claim upon which relief could be granted; indeed, they never moved to dismiss it. In Chervin v. Travelers Ins. Co., 448 Mass. 95, (2006), the SJC explained that “to prevail on a claim for malicious prosecution, a plaintiff must establish that he was damaged because the defendant commenced the original action without probable cause and with malice, and the original action terminated in his favor.” Id. at 103-04. It then adopted the definition of “probable cause” set out in the Restatement (Second) of Torts §675: “One who takes an active part in the initiation, continuation or procurement of civil proceedings against another has probable cause for doing so if he reasonably believes in the existence of the facts upon which the claim is based, and . . . correctly or reasonably believes that under those facts the claim may be valid under the applicable law ...” Id. The allegations of the amended counterclaim make clear that the plaintiffs do not base their assertion that the defendants lacked probable cause on a misstatement or mistake of law, but rather on their contention that the defendants did not reasonably believe the allegations of fact set out in their complaint, i.e., that they knew the factual allegations central to the complaint were false. In consequence, Mr. Steele’s opinion that the complaint would have survived a motion to dismiss is not relevant to any disputed issue of fact in this case, and he offers no opinion on whether any material factual allegations made by the defendants were knowingly false.
Finally, with respect to Mr. Steele’s fifth Opinion and Observation, Mr. Steele comments that he never presided over a malicious prosecution claim arising out of the unsuccessful prosecution of a corporate governance claim. Once again, his commentary to this Opinion and Observation never mentions any of the facts of this case. The fact that such cases are rare in Delaware, and in this judge’s experience, equally rare in Massachusetts, provides a finder of fact with no assistance in determining whether any of the material factual allegations upon which the defendants premised their complaint in the instant case were knowingly false. The court assumes that if the elements of a claim for malicious prosecution (which are essentially the same in Massachusetts and Delaware, see Alexander v. Petty, 108 A.2d 575, 577 (Del.Ch. 1954)), were proven in a Delaware court, the Delaware court would enter judgment for the plaintiff. The fact that such claims are rare in Delaware is of no value to a finder of fact. In medical malpractice cases tried in Massachusetts courts we do not allow the defendant to offer expert testimony that the vast majority of such cases that are tried to completion in Massachusetts result in a defendant’s verdict.
David E. Brown
David E. Brown is presently a consultant assisting banks and credit unions with regulatory compliance. Prior to that he worked for financial institutions in connection with commercial lending. The plaintiffs’ principal argument in support of their contention that Mr. Brown’s testimony should be excluded is that the Baytree Loan documents and the VBenx lending history “speak for themselves.” In reality they do not. Juries are generally not well equipt to read through these materials and come to their own understanding of the loan terms, what constitutes an event of default, or what the creditor’s rights are under various circumstances. Mr. Brown can also testify as to the risks faced by anyone who had provided collateral to secure the Baytree loan, as Finnegan had. It is perfectly appropriate for an expert witness to review the loan documents and explain their significance to a jury.
An expert can also testify concerning whether Baytree’s loan portfolio was under review by regulators, what that means, and what steps banks generally may take under such circumstances. Strictly speaking, none of this testimony is expert testimony as it provides explanation and industry background not opinion. Mr. Brown, of course, cannot offer opinion testimony as to what Baytree would have done, if Back Bay Ventures had not purchased the loan from Baytree and what concessions Baytree would or would not have made to VBenx, as that would be pure speculation.
More specific limitations on the testimony that Mr. Brown may offer at trial should be left to the judge who will preside over the trial.
Were the Expert Witness Fees Reasonably Incurred?
Although some of Mr. Brown’s proffered opinion testimony is inadmissible, the majority of the points on which the defendants propose to have Mr. Brown testimony is admissible. Therefore, his fees were reasonably incurred.
The fees incurred to retain Mr. Steele are more problematic. As noted above, Mr. Steele’s proposed testimony is almost entirely generic discussion of corporate governance litigation in Delaware with no reference at all to the facts of this case. The defendants had to know that the likelihood that his testimony would be admitted was slight. On the other hand, were it admitted, thejury might well give substantial weight to opinions offered by the former Chief Justice of the Delaware Supreme Court. The plaintiffs have increased the stakes of this litigation with their claim that VBenx suffered damages measured in the millions of dollars as a result of the pendency of the defendants’ complaint.[2] The court notes that the defendants paid Mr. Steele’s retainer themselves before *434 the special master ruled that these expert fees were covered by VBenx’s obligation to advance litigation expenses. On balance, the court concludes that it was not so unreasonable to attempt to offer Mr. Steele’s testimony that VBenx’s advance must be repaid presently. Although, as with all other advances of litigation expenses made by VBenx, it must be reimbursed to VBenx if Finnegan’s defense of the counterclaims is unsuccessful.
ORDER
For the foregoing reasons, the Plaintiffs-in-Counterclaim’s motion to exclude expert testimony is ALLOWED, in part, and DENIED, in part, as follows: Attorney Steele’s proposed testimony is excluded; Mr. Brown may testify, but not offer opinions on what Baytree would have done had Back Bay Ventures not purchased the loan. Further issues as to the specifics of Mr. Brown’s testimony are reserved for the trial judge._

 It is important to note that by finding that it would be misleading to admit the proffered opinions, the court is not suggesting that it has formed any opinion on the subject of whether the defendants filed and litigated their case in good faith. Rather, it only holds that testimony that reflects generally on the value of claims that address corporate governance under Delaware law is not helpful in assessing whether defendants’ claims were brought with probable cause and without malice.

 It appears that VBenx has struggled financially and never generated any profits. The plaintiffs’ counsel nonetheless has stated at hearings that plaintiffs will support this claim with the testimony of a damages expert. The court has not seen this expert’s report and the defendants have stated that they will be filing a Daubert-Lanigan motion to exclude it. The court offers no comment on whether this opinion testimony will be admissible.