NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-327

PAMELA TAYLOR NATALINE

vs.

KAREN NATALINE.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff (grandmother) appeals from a judgment dismissing her petition, pursuant to G. L. c. 119, § 39D, seeking visitation rights with her grandchildren. In the Probate and Family Court, the grandmother sought the appointment, pursuant to G. L. c. 215, § 56A, of a guardian ad litem to investigate, as well as orders for temporary visitation with the grandchildren. A judge dismissed her petition pursuant to Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974), for failure to state a claim, in accordance with Blixt v. Blixt, 437 Mass. 649 (2002), cert. denied, 537 U.S. 1189 (2003), and denied her requests for appointment of the guardian ad litem and temporary visitation with the children. We affirm.

Background. As we must, we take as true the allegations in the grandmother's petition, drawing any reasonable inferences in

her favor.[1]  The children's father battled lung cancer for many years.  His mother, the grandmother, was "greatly involved" in the grandchildren's lives beginning with their births.  When the older grandchild was a baby, the grandmother took her on "[a]lmost daily" walks and, after the father was diagnosed with cancer, the grandmother babysat the older grandchild "almost every day."  In 2012, the grandmother moved to New York for about a year, during which she had family visits with the mother, father, and older grandchild.

At the father's request, the grandmother moved back to Massachusetts to help him, living two to three miles away from his family, "babysitting almost every day," and taking the older grandchild to church "almost every Sunday."  When the younger grandchild was born in 2013, the grandmother continued to babysit the grandchildren "almost every day, if not every day," including taking them out for walks and activities and buying them clothing and toys.  In 2014, the parents and the grandchildren moved to Florida and, at the father's request, the

---

[1] The grandmother's pro se affidavit included with her petition was sparse.  Some ten months later, after the mother had moved to dismiss, and without leave of court, the grandmother filed an "amended affidavit."  See Mass. R. Dom. Rel. P. 15 (a).  Although the mother "ask[ed] the court to disregard" this improper filing, the parties addressed it during argument on the motion to dismiss, and the judge made no ruling as to whether it was to be included in the record.  We assume without deciding that it is properly before us.

grandmother moved with them.  For about seven months, they lived together in the grandmother's home.  In 2015, the parents and grandchildren moved to a nearby town and the grandmother continued to take the grandchildren to church weekly, babysit them, take them for treats, and pick them up from school when their mother was working.  During that time, the grandchildren spent "almost every weekend," and occasional weeknights, with the grandmother.  In June 2017, the grandmother took the older grandchild to the dentist and paid for a "lot of dentistry work" that the child needed.  In June 2018, the grandmother took the older grandchild to Boston for two weeks.  The grandmother's last visit with the grandchildren was on August 31, 2018.  In September 2018, the grandmother called the Florida Department of Children and Families (DCF) to report two "incidents," one with each grandchild.

The father died in late October 2018.  The grandmother filed a complaint seeking visitation in October 2019.

Discussion.  "[T]he Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children."  Troxel v. Granville, 530 U.S. 57, 66 (2000).  "To accord with due process, an evaluation of the best interests of the child under [G. L. c. 119, § 39D] requires that a parental decision concerning grandparent visitation be given presumptive

3

validity." Blixt, 437 Mass. at 657-658. Fit parents are presumed to act in the best interest of their children. Id. at 658, quoting Troxel, supra at 68. Thus, where a grandparent seeks to overrule a parental decision, "the grandparents must allege and prove that the failure to grant visitation will cause the child significant harm by adversely affecting the child's health, safety, or welfare." Blixt, supra at 658. "The requirement of significant harm presupposes proof of a showing of a significant preexisting relationship between the grandparent and the child. In the absence of such a relationship, the grandparent must prove that visitation between grandparent and child is nevertheless necessary to protect the child from significant harm." Id.

Recognizing the disruptive nature of the litigation of a grandparent visitation complaint, and its potential implication of the parent's constitutional rights, our cases apply a heightened pleading standard to such cases. "Before a parent or parents are called upon to litigate fully a grandparent visitation complaint, with all the attendant stress and expense, the grandparent or grandparents should make an initial showing that satisfies a judge that the burden of proof . . . can be met. To this end, any complaint filed under the statute should be detailed and verified or accompanied by a detailed and

4

verified affidavit setting out the factual basis relied on by the plaintiffs to justify relief." Blixt, 437 Mass. at 666.

"We review an order allowing a motion to dismiss de novo." Frazier v. Frazier, 96 Mass. App. Ct. 775, 777 (2019), citing Martinez v. Martinez-Cintron, 93 Mass. App. Ct. 202, 204 (2018). In doing so, we accept the plaintiff's well-pleaded factual allegations as true and consider whether they "raise a right to relief above the speculative level" (quotation omitted). Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008). We may also consider "any favorable inferences reasonably drawn from" the plaintiff's factual allegations. Ginther v. Commissioner of Ins., 427 Mass. 319, 322 (1998). "To survive a rule 12 (b) (6) motion to dismiss, a pleading must include 'factual allegations plausibly suggesting (not merely consistent with) an entitlement to relief.'" Martinez, supra, quoting Iannacchino, supra.

Even crediting the grandmother's descriptions that, beginning with their births, she was an important figure in the children's lives, that she provided care multiple times a week until August 2018, and that, before that date, the parents relied on her for childcare, she failed to make the necessary showing that "failure to grant visitation will cause the child[ren] significant harm by adversely affecting the child[ren]'s health, safety, or welfare." Blixt, 437 Mass. at

5

658.  The relationship she describes, while unquestionably a meaningful one, does not rise to the level required to override the mother's constitutional rights.  See <u>Dearborn</u> v. <u>Deausalt</u>, 61 Mass. App. Ct. 234, 237-238 (2004) (where grandparent saw grandchildren several times a month, took them on camping trips and to local activities, and provided childcare when mother was busy, relationship was insufficient to rebut presumption that mother was fit to make decisions about visitation).  As we noted in describing <u>Dearborn</u>, "[w]hile apparently nurturing and enriching, the relationship is not 'such as de facto parents or other relationships of close bonding, where significant harm may readily be inferred from and is inherent in the disruption of the relationship.'"  <u>Frazier</u>, 96 Mass. App. Ct. at 779, quoting <u>Dearborn</u>, <u>supra</u> at 238.

Recognizing that her lack of recent contact with the children limits her ability to present facts about their current well-being, the grandmother also sought to have the judge appoint a guardian ad litem to "establish the harm that would ultimately entitle her to visitation."  The decision whether or not to appoint a guardian ad litem rests in the "considerable discretion" of the trial court, <u>Custody of a Minor (No. 1)</u>, 21 Mass. App. Ct. 985, 986 (1986), and we will not disturb the exercise of that discretion here.  The allegations in this case do not persuade us that the appointment of a guardian ad litem

6

was necessary to allow the judge to evaluate the best interests of the children, compare, e.g., <u>Sher</u> v. <u>Desmond</u>, 70 Mass. App. Ct. 270 (2007), and the grandmother has cited no Massachusetts case that would compel the judge to make such an appointment.[2]

We are similarly unpersuaded by the grandmother's motion for temporary orders for visitation. As more fully explained above, the mother's decisions about grandparent visitation are presumed to be valid. See <u>Blixt</u>, 437 Mass. at 657-658. Whether by temporary or permanent orders, we will not lightly disturb this presumption. The mother's request for an award of her appellate attorney's fees is denied.

<u>Judgment affirmed</u>.

By the Court (Blake,
Hershfang & D'Angelo, JJ.[3]),

*Joseph F. Stanton*

Clerk

Entered: March 29, 2023.

---

[2] Although the grandmother cited out-of-State cases for this proposition, as counsel appropriately acknowledged at oral argument, those cases are not binding on this court.
[3] The panelists are listed in order of seniority.