NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1479

THE COOK FAMILY CHARITABLE FUND, INC.

vs.

FROZEN 4 LLC & another.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, The Cook Family Charitable Fund, Inc. (charity), brought this action against the defendants, Frozen 4 LLC and Frozen Four Corporation (together, Frozen 4), seeking to enforce a charitable subscription and to recover damages for alleged fraudulent misrepresentation, breach of contract, and violations of G. L. c. 93A, § 11.  Frozen 4 filed a motion to dismiss under Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974), for failure to state a claim.  The motion was allowed by a judge of the Superior Court, and this appeal from the judgment ensued. We reverse.

---

[1] Frozen Four Corporation.

Background.  We summarize the factual allegations in the charity's complaint, supplemented by information drawn from the exhibits attached to and referenced within the complaint.  For the purposes of reviewing a motion to dismiss, we accept all allegations as true and draw all reasonable inferences in the charity's favor.  See Lanier v. President & Fellows of Harvard College, 490 Mass. 37, 40 (2022).

The charity is a nonprofit organization created to improve the lives of individuals with addiction, cancer, or intellectual disabilities.  Frozen 4 currently operates a retail marijuana store.  As part of Frozen 4's application for a retail license to sell marijuana, it was required to submit a "Plan for Positive Impact" (plan) to the Cannabis Control Commission (commission), detailing how it would positively contribute to areas that had been negatively affected by the criminalization of marijuana.  To that end, in May 2019, the president of Frozen 4, Benjamin Virga, reached out to Peter Cook, a director of the charity, "to talk about a donation to the [charity] in exchange for the [charity's] agreement to be listed as a community support organization in Frozen 4's [a]pplication."  In July

2019, at Virga's request, Cook signed a letter in support of Frozen 4's application for a retail license.[2]

In February 2020, Virga met with Cook and other members of the charity. At that time, Virga told the charity that Frozen 4 had executed a host community agreement with the town of Marshfield (town) and that the charity had been appointed as Frozen 4's designated charity pursuant to the commission's regulations. Virga also represented that the charity "would be receiving between $50,000 and $100,000 at some point between June and September 2020 to enable [the charity] to continue, and start, programs in [disproportionately impacted] communities in Southeastern Massachusetts."

By August 2020, however, the charity still had not received any donations. Cook spoke with Virga, who again represented that Frozen 4 would make a donation to the charity. Then, after consulting with Virga in February of 2021, the charity drafted a press release, which it posted on its website on March 18, 2021, stating that it had received a pledge of $100,000 from Frozen 4

_____

[2] The letter stated in pertinent part: "The [charity] is aware of the planned donations to be made by Frozen 4, LLC as part of their Plan for Positive Impact being submitted to the Cannabis Control Commission and we will gladly accept their donation. The [charity] has both planned and current programs in place already that are focused on serving the Communities of Taunton, Abington, and Braintree in Massachusetts."

3

and "will use funds for online training to businesses and municipal departments on identifying addiction."

About nine months later, in December 2021, Frozen 4 opened its retail cannabis store in Marshfield. Shortly thereafter, Frozen 4 began to back away from its commitment to the charity. In response to inquiries from the charity, Frozen 4 sent an e-mail to Cook stating that it owed $125,000 to the town in connection with the host community agreement, but assured Cook that the designated donations would be made after that payment was completed. Later, in response to further inquiries from Cook, who informed Virga that the charity had "been counting on [Frozen 4's] commitment for some time now" and that a "deposit at this time is needed," Virga falsely informed the charity that the commission had rejected Frozen 4's plan. Virga blamed the commission for changing its guidelines and asserted that "simply donating money was no longer sufficient" to meet the commission's requirements. Virga also "inexplicably" stated that the $100,000 pledge represented a total amount of donations to various entities and not an amount promised to the charity. After unsuccessfully attempting to resolve the matter, the charity brought this action.

We understand the charity's complaint to allege the following: fraudulent misrepresentation (count I); charitable

4

subscription (count II); breach of contract (count III); and violation of G. L. c. 93A (count IV).  The crux of the charity's claims is that it detrimentally relied on Frozen 4's pledge by committing resources "to provide educational and training programs to businesses, school systems, and fire and police departments in several communities."  At the time the lawsuit was filed, the charity had expended approximately $48,000 to "get the aforementioned programs up and running."  The charity also owed approximately $14,000 in unpaid invoices and had made various commitments resulting in an additional expense of $20,000.  The charity claimed that the total sum it spent in reliance on Frozen 4's promise was approximately $82,000.

As previously noted, Frozen 4 moved to dismiss the complaint.  Following a hearing, the judge entered a memorandum of decision and order allowing the motion.  The judge dismissed the charity's fraudulent misrepresentation claim on the basis that the charity failed to plead inducement or damages.  Next, the judge dismissed the charity's claim for enforcement of a charitable subscription on the basis that the charity's allegations "f[e]ll short on both specificity and consideration" and did not suggest a "meeting of minds."  He then determined that the breach of contract claim failed for the same reasons as the misrepresentation and charitable subscriptions claims.  And

5

lastly, regarding the charity's claim for violation of G. L. c. 93A, the judge concluded that it too must be dismissed because the claim is derivative of the other claims.

Discussion. "We review the grant of a motion to dismiss de novo, accepting as true all well-pleaded facts alleged in the complaint, drawing all reasonable inferences therefrom in the plaintiff's favor, and determining whether the allegations plausibly suggest that the plaintiff is entitled to relief." Lanier, 490 Mass. at 43. The question presented is whether the charity stated a claim against Frozen 4 for fraudulent misrepresentation, charitable subscription, breach of contract, and violation of G. L. c. 93A.

1. The misrepresentation claim. To recover on a claim asserting fraudulent misrepresentation, a plaintiff must show "a false statement of a material fact made to induce the plaintiff to act, together with reliance on the false statement by the plaintiff to the plaintiff's detriment." Zimmerman v. Kent, 31 Mass. App. Ct. 72, 77 (1991). We conclude that the allegations in the complaint, if true, establish that Virga, on behalf of Frozen 4, falsely stated that the charity would receive between $50,000 and $100,000 in donations. Furthermore, a jury could find that Virga effectively confirmed that Frozen 4 would make a donation in that amount by acquiescing to the charity's request

6

that it publicize a pledge of $100,000. The complaint also sets forth facts which, if believed, establish that the charity was induced to spend time, effort, and money to develop programs in anticipation of the promised donations, thereby relying on the false statement to its detriment. See generally Marram v. Kobrick Offshore Fund, Ltd., 442 Mass. 43, 59 (2004) ("[r]eliance normally is a question for a jury"). In addition, contrary to Frozen 4's argument, the charity did not need to allege facts to show that Frozen 4 intended for it to develop specific programs using the promised money to survive a motion to dismiss for failure to state a claim.

2. The charitable subscription claim. "To enforce a charitable subscription or a charitable pledge in Massachusetts, a party must establish that there was a promise to give some property to a charitable institution and that the promise was supported by consideration or reliance." King v. Trustees of Boston Univ., 420 Mass. 52, 56 (1995). As previously discussed, the complaint sets forth sufficient facts to establish that Frozen 4 made a promise to donate money in exchange for the charity's support of Frozen 4's application to the commission. Thus, Frozen 4's promise was supported by consideration. Moreover, the charity's support (i.e., the legal consideration) did not consist solely of signing a letter of support as Frozen

7

4 claims. The charity did far more. It agreed to, and did, spend its time, money, and effort to implement the programs in support of Frozen 4's plan. Put another way, the charity's "consideration" was not limited to sending a letter of support, but also included fulfilling its promise to use the donations from Frozen 4 in the manner specified. In any event, even if we were to assume that (1) the only consideration for the donation was to send a letter in support of Frozen 4's application, and (2) at that time the amount of the donation was not clear, the claim for charitable subscription should not have been dismissed because the charity alleged sufficient facts to establish that it relied on Frozen 4's promise. Our case law requires a showing of "consideration or reliance." King, supra.

3. The breach of contract claim. To demonstrate a plausible breach of contract claim, the charity was "required to establish four elements: an agreement between the parties, supported by valid consideration; that the [charity was] ready, willing, and able to perform; that [Frozen 4] committed a breach of the contract; and that the [charity] sustained damages." 477 Harrison Ave., LLC v. JACE Boston, LLC, 483 Mass. 514, 523 (2019). For the same reasons the complaint is sufficient to state a claim for relief "above the speculative level" (citation omitted), Iannacchino v. Ford Motor Co., 451 Mass. 623, 636

(2008), for misrepresentation and charitable subscription, the complaint sufficiently states a claim for breach of contract. We do not agree with the judge's observation, adopted by Frozen 4 on appeal, that the charity's allegations "f[e]ll short on both specificity and consideration" and did not suggest a "meeting of minds." To the contrary, as noted, the charity's consideration consisted of its program development, and further, the alleged facts show a meeting of the minds whereby, Frozen agreed to make a donation in exchange for the charity's development of such programs. We therefore reject Frozen 4's argument that ambiguities regarding the amount of the promised donation rendered unreasonable any reliance the charity placed on the promised donation.

4. The G. L. c. 93A claim. General Laws c. 93A, § 2 (a), prohibits "[u]nfair or deceptive acts or practices." When considering a c. 93A claim, "[a]lthough whether a particular set of acts, in their factual setting, is unfair or deceptive is a question of fact . . . the boundaries of what may qualify for consideration as a c. 93A violation is a question of law" (citation omitted). Milliken & Co. v. Duro Textiles, LLC, 451 Mass. 547, 563 (2008). To determine if a practice is unfair, we consider "(1) whether the practice . . . is within at least the penumbra of some common-law, statutory, or other established

9

concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers (or competitors or other businessmen)" (citation omitted). PMP Assocs., Inc. v. Globe Newspaper Co., 366 Mass. 593, 596 (1975).

Here, the motion judge concluded that because the G. L. c. 93A claim was derivative of the other claims, it was not viable. That conduct is not independently unlawful is not a defense to a G. L. c. 93A claim, as the statute "created new substantive rights by making conduct unlawful which was not unlawful under the common law or any prior statute" (citation omitted). Slaney v. Westwood Auto, Inc., 366 Mass. 688, 693 (1975). Similarly, because the claim was derivative of other claims is not a valid reason to conclude that the 93A claim was not viable. In any event, because we have concluded that the other claims are viable at this stage of the proceedings, we also reverse the order allowing the motion to dismiss as to the G. L. c. 93A claim.

For the forgoing reasons, the judgment dismissing the

charity's complaint is reversed, and the matter is remanded to the Superior Court for further proceedings.[3]

So ordered.

By the Court (Vuono,
    Brennan & D'Angelo, JJ.[4]),

_Paul Little_

Clerk

Entered:  March 28, 2025.

---

[3] Frozen 4's request for costs is denied.

[4] The panelists are listed in order of seniority.

11